## HARVEY FARRINGTON ET AL. v. BARCLAY SMITH.

*Sale—Warranty of quality—Rescission—Delay.*

1. No doubt, when goods are bought as corresponding to samples, and so appear, a reasonable delay in examining is proper; but, when it is once ascertained that they are not supposed to conform to the sample, great promptness is required both in examining and in rescinding with as little delay as the usual methods of business will permit.

2. It is the duty of a merchant buying goods by sample to ascertain without any unreasonable delay their quality, and if complaints are made by purchasers to at once investigate them, and make up his mind what he will do, and notify the vendor of such decision. What he may have sold before being led to suspicion will not affirm the purchase for the remainder; but he has no right to thereafter offer the goods for sale, and at the same time repudiate the contract of purchase.

Error to Wayne. (Brevoort, J.) Argued October 18, 1889. Decided November 8, 1889.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Frank F. Williams* (*Charles K. Latham*, of counsel), for appellants, contended:

1. The question of acceptance or non-acceptance is a question as to what was the intention of the buyer, as signified by his out-

ward acts; citing Benj. Sales, 128; and receipt becomes acceptance if the right of rejection is not exercised within a reasonable time; citing Newmark, Sales, §§ 263, 265; Benj. Sales, § 703.

2. Retention of goods received, without rejection or offer to return, estops the purchaser from all claims of damage, and turns receipt into acceptance; citing Newmark, Sales, §§ 261, 265; *Reed v. Randall*, 29 N. Y. 358; *Weaver v. Wisner*, 51 Barb. 638; *Leavenworth v. Packer*, 52 Id. 132.

*James H. Brewster, John W. A. S. Cullen,* and *James V. D. Willcox,* for defendant.

CAMPBELL, J.   In November, 1886, plaintiffs, a tea firm of New York, through Mr. Schuyler, their Detroit agent, received and filled an order from defendant for two kinds of Japan tea, in half chests; five half chests, and 12 boxes of 20 pounds each, of tea billed as Formosa, of four different prices, ranging from 25 to 35 cents a pound; four half chests of Congou, at 22 and 30 cents a pound; and 11 boxes of Congou, of 20 pounds each, at 24 and 32 cents a pound. The whole bill amounted to $359.21, due March 24, 1887. The Japan tea amounted to $84.

The tea was at once shipped, and reached Detroit in a few days. When the draft was drawn for payment at the end of four months, defendant refused to pay it by a letter which stated he had still on hand almost the entire bill; that he had informed plaintiffs' agent twice in regard to the goods, more especially the English breakfast and Oolong, that they did not come up to what they were represented to be; that he had had both English breakfast and Oolong returned as not fit to steep. He asked for advice what to do.

This letter makes no reference to Japan tea, and makes no discrimination among the other kinds at all definite. It makes no offer to pay for anything.

The bill contained a printed notice that all claims for

damages or deduction were to be made immediately after receipt of goods.

On the trial most of the material facts were disputed. Defendant claimed that the order was given on samples which were represented by Schuyler, the agent, to correspond with those in defendant's stock on sale. He also claims that within a very short time after the goods arrived he sold a 20-pound box to one Alexander, and another to one Thom, which were returned as not up to the standard. The testimony is not very definite in identifying these. Defendant sold all the Japan tea without complaint. He says more or less complaint was made about some other tea. He further testifies that, after being fully informed about the complaints of quality, and after he claims to have notified Schuyler of the difficulty, he sold a part of the tea to customers.

Bearing in mind the fact that there were several different grades and prices of each kind of tea, it is noticeable that there is no testimony which fixes how much of each kind was disposed of, and how much remained on hand. Allowing defendant's asserted right to be relieved from paying for all he did not sell, no criterion is furnished for getting at any result. Whatever difficulty may have existed concerning items of sale and items of return, the description of what was left on hand was possible and necessary.

The defendant had the duty laid on him of finding out, with no unreasonable delay, the quality of the teas. As soon as complaints arose it was his duty to investigate at once, and to make up his mind what he would do. He had no right to offer them for sale thereafter, and at the same time repudiate the bargain. What he sold before being led to suspicion would not affirm the purchase for the remainder; but it was his business to make no fur-

ther sales except on his own account, and it was his duty to notify plaintiffs at once of his decision.

We shall not undertake to pass upon disputed facts. It is doubtful, on his own statement, whether he gave notice to Schuyler of a rescission of the purchase, and Schuyler denies it altogether. What may turn up in another trial we shall not anticipate; but, unless the sales made after the alleged repudiation are more fully explained than the record explains them, they are not consistent with such repudiation. The letter of March, 1887, is a practical assertion that the whole purchase was wrong, when the Japan teas had been sold without reserve.

Among other things, the court below told the jury that, if there was a usage or custom of trade not to examine such goods until they are sold to customers, the buyer is not bound to make an examination of the goods at once; but if they are sold in the ordinary course of trade, and then examined, that might be regarded as a reasonable time, and notification within a reasonable time thereafter would be sufficient.

This instruction is not based on any evidence that such a custom existed. No doubt, when goods are bought as corresponding to samples, and so appear, a reasonable delay in examining is proper; but, when it is once ascertained that they are not supposed to conform to sample, great promptness is required both in examining and in rescinding with as little delay as the usual methods of business will permit.

The court also called the attention of the jury more than once to $84 as what defendant had received on sales. That sum was the price of the Japan tea alone, and did not include any other sales. It was defendant's duty to show what tea he had on hand, and of what kinds and prices. This he failed to do, but he did testify to sales

enough allowed at the lowest prices to considerably enlarge the verdict.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.