GEORGE D. WILLIAMS AND CHARLES H. WILLIAMS v.
WILLIAM C. ROBB.

*Sale—Severable contract—Acceptance—Estoppel—Refusal to receive goods—Resale by vendor—Damages—Evidence.*

1. A contract for the shipment of 15 car-loads of potatoes, while entire in the sense that either party has a right to full performance, is severable where it clearly appears that the shipments were to be made in car lots, to be paid for as received.

2. The sale of the potatoes having been made without a distinct warranty that they should be of the kind and quality ordered, their acceptance by the vendee, after an opportunity for inspection, estops him from claiming damages for alleged defects therein; citing *Paving Co. v. Gorman*, 103 Mich. 403.

3. An excessive freight rate was charged upon some of the cars, which, with the accompanying draft for the purchase price, amounted to more than the price agreed to be paid.    On discovering this, the vendors agreed to pay the excess in freight, and deliver the potatoes for the agreed price.    And it is held that, if this was done within a reasonable time, the vendee should have received the potatoes.

4. Two car-loads of the potatoes went astray, and the vendors

thereupon arranged to supply from the local market the deficiency thus caused. And it is held that it is not important where the cars went; that the agreement was to deliver the potatoes where the vendee resided, and, if the vendors had the potatoes there, it was no concern of the vendee how or where they got them, or how many cars went astray.

5. An instruction that the plaintiffs could not recover unless the jury should find that they tendered potatoes of the agreed quality and in the agreed quantity, within a reasonable time, and for the agreed price, at the city where the vendee resided, was as favorable a charge as the defendant was entitled to.

6. The vendors, on the refusal of the vendee to receive a portion of the potatoes, sold them at the best price obtainable, and sued the vendee for damages for his refusal to receive the potatoes. And it is held that, in case of a recovery, the measure of damages would be the difference between the contract price and the market value of the potatoes.

7. Evidence that the vendors sold the potatoes for the highest price obtainable was admissible, and, if true, furnished a most satisfactory indication of the market price, and might, if an immediate sale was necessary to avoid loss, have justified a verdict for said difference, although the potatoes were sold below the market value.          -  .

Error to Wayne. (Frazer, J.) Argued January 31, 1895. Decided February 26, 1895.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*George X. M. Collier,* for appellant.

*Bowen, Douglas & Whiting,* for plaintiffs.

HOOKER, J. The defendant, a dealer in Detroit, contracted for the delivery to him of 15 cars of potatoes. The contract was made by wire, and. consisted of the following telegrams:

"DETROIT, July 7, 1892.
"Name lowest, five cars choice Rose and five Chilies, delivered Detroit.
"W. C. ROBB."

"NORFOLK, July 7, 1892.

"Will sell five cars potatoes, delivered Detroit, two-twenty bbl., mostly Rose.   Will ship as soon as possible. If wanted, wire quick.

"WILLIAMS BROS."

"DETROIT, July 7, 1892.

"Ship eight quick.   Wire numbers and route.

"W. C. ROBB."

"DETROIT, July 8, 1892.

"Ship potatoes *via* Mich. Central, at Toledo.

"W. C. ROBB."

"NORFOLK, July 8, 1892.

"Ship two cars C. and O., three cars Penn. railroad. Will try and ship some to-morrow.   Draft with bill lading.

"WILLIAMS BROS."

"DETROIT, July 9, 1892.

"Make our order fifteen cars.   Ship four or five a day. We will pay drafts.   Reference Preston National Bank.

"W. C. ROBB."

"NORFOLK, July 9, 1892.

"Ship five cars yesterday, same to-day.   Ship balance Monday.   Draw draft for amt.

"WILLIAMS BROS."

"NORFOLK, July 11, 1892.

"Shipping four cars to-day.   Must we ship the other car Wednesday?   Answer.

"WILLIAMS BROS."

"DETROIT, July 11, 1892.

"Suit yourself.   Wire if you ship.

"W. C. ROBB."

"NORFOLK, July 13, 1892.

"Shipping car potatoes to-day; last contract.

"WILLIAMS BROS."

Two cars arrived in due season, and were unloaded by the defendant, plaintiffs' sight draft being paid for the purchase price.

The following correspondence by wire and letter passed between the parties:

"DETROIT, July 15, 1892.

"Two cars unloaded.   Stock runs poor; lots rotten. Can't pay drafts till unloaded.   We bought delivered.

"W. C. ROBB."

"NORFOLK, VA., July 15, 1892.
"Pay drafts. All rotten potatoes turn over to D. O. Wiley & Co. They will pay for them, or you can draw on us for difference. Answer.

"WILLIAMS BROS."

"DETROIT, July 16, 1892.
"Will pay drafts, two dollars barrel. Sell for your acct., if not willing take our word for poor stock. We can buy plenty. Wire quick.

"W. C. ROBB."

"DETROIT, July 17, 1892.
"Will pay drafts, two dollars bbl. Wire bank to that effect. First two cars unloaded; worth no more; too much poor stock. Potatoes here subject to your order. Wire quick. Weather hot. Should be unloaded quick.

"W. C. ROBB."

"July 17, 1892.
"If convenient, meet me Hotel Normandie, arrival Mich. Central to-night.

"C. H. WILLIAMS."

"DETROIT, MICH., July 18, 1892.
"W. C. ROBB, Esq.,
     "Detroit, Mich.
"Dear Sir: You make objection to receiving the potatoes shipped you under our contract by telegram of recent date, which called for fifteen car-loads, two of which you have already accepted and paid for, on the ground that the potatoes at the Michigan Central yard are not in merchantable condition. Being able to supply any deficiency in the potatoes shipped, at once, we herewith offer to deliver, as per contract, thirteen car-loads of potatoes of quality contracted for. Please signify, on receipt of this, your conclusion as to whether you will accept or reject this offer. In case of your failure to accept, and owing to the perishable nature of the goods, we shall have the potatoes sold at the best market price, crediting you with proceeds thereof.

"Yours truly,    WILLIAMS BROS."

"DETROIT, July 18, 1892.
"Williams Bros.
"Gentlemen: Your favor of this date to hand. We are ready at all times to carry out our contracts. The potatoes at depot are not such stock as we bought; conse-

qnently will not accept them.   We did take two cars to store, they seemingly all right on top; but, when we began to empty them, found that they were a very inferior lot, being small in size, badly decayed, and not merchantable.
" Yours truly,      W. O. Robb."

One of the plaintiffs went to Detroit, and, finding that all of the potatoes contracted for except two cars had arrived, arranged with a local dealer to supply a sufficient quantity of potatoes to make good any deficiency that might exist by reason of the non-arrival of the two cars or defects in any of the potatoes.   He then saw the defendant, and offered to deliver to him the full amount of potatoes ordered.   The defendant refused to accept them, whereupon the plaintiffs sold the potatoes for the best price obtainable, and this action was brought.

The plaintiffs claimed damages for the defendant's refusal to accept the potatoes.   The defendant sought to recoup for alleged defects in the two car-loads of potatoes received.   The court instructed the jury that, by receiving the two car-loads after an opportunity for inspection, the defendant accepted the same; and stated, further, that unless the plaintiffs delivered the requisite number of potatoes called for by the contract within a reasonable time, and at the price agreed upon, the defendant was under no obligation to receive the same, but that, if they offered to deliver the same within a reasonable time for such price, after having arranged to procure the necessary quantity to supply defects, the defendant was bound to receive the same, and in such case, if he refused to accept them, the rule of damages would be the difference between the contract price and the market value of these goods in Detroit.   The jury found a verdict for the plaintiffs, and the defendant appealed.

The contract was severable.   Although it contemplated the delivery of 15 car-loads of potatoes, and was therefore entire in the sense that either party had a right to full

performance, it was the manifest intention of the parties that the shipments were to be made in car lots, which were to be paid for as received. The defendant's testimony shows this to have been his understanding. The defendant had an opportunity for inspection, and, unless there can be said to have been a distinct warranty that the potatoes should be of the kind and quality ordered, he should have refused to receive them. The distinction between a condition precedent and a warranty was recently discussed in the case of *Talbot Paving Co. v. Gorman*, 103 Mich. 403, and need not be repeated here. The circuit judge was right in holding that he could not claim damages for defects in the two car-loads received.

The testimony shows that two car-loads went astray, being sent to Chicago by mistake of the railroad companies. It also appeared that excessive freight was charged by the roads upon some of these cars, and that, had the defendant desired to get them, he would have been required to pay these freights, which, with the accompanying drafts, amounted to more than the agreed price. The defendant claims that the plaintiffs were not authorized to ship the potatoes to themselves, sending draft to bank for amount less freight, with bill of lading attached, to be surrendered on payment of the draft. As already intimated, we think this last claim is refuted by the defendant's own testimony, while he made no complaint about excessive freights, if, indeed, he knew about it. He declined to receive the potatoes upon other grounds, and apparently never took the trouble to look at them or ascertain anything about the charges. The plaintiffs discovered it, and offered to pay this excess, and to deliver the potatoes for the price agreed upon. If this was done within a reasonable time, as the jury seem to have found that it was, the defendant should have received them. Nor is it important where the two cars went. The agree-

ment was to deliver the potatoes in Detroit. If the plaintiffs had the potatoes there, it is no concern of the defendant how or where they got them, or how many cars went astray, or where they went.

The court instructed the jury that the plaintiffs could not recover unless they tendered potatoes of the agreed quality and quantity, within a reasonable time, and for the agreed price, at the city of Detroit, which was as favorable a charge as the defendant was entitled to. The jury having found this state of facts, it is a complete answer to the claim that the defendant was entitled to damages for the non-delivery of the 13 cars, upon the claim that he could have gotten $2.50 a barrel for the potatoes if they had arrived earlier. It is therefore unnecessary to consider the questions raised upon the refusal of the court to admit evidence to show that the market was higher before their arrival.

The jury having found that the plaintiffs were entitled to recover, the measure of damages was correctly stated to be the difference between the contract price and the market value of the potatoes. It was competent to show that the plaintiffs sold the potatoes for the highest price obtainable. If true, it furnished a most satisfactory indication of the market price, and might, if an immediate sale was necessary to avoid loss, have justified a verdict for the difference, although sold below the market.

The market report of potatoes by the barrel from retailers was properly excluded. The question here was what such dealers paid for potatoes, not what they sold them for.

There are many other assignments of error that we cannot mention specifically. We have examined them, and think there are none that should reverse the case.

The judgment will therefore be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.