BUICK MOTOR CO. *v.* REID MANUFACTURING CO.[1]

1. SALES—WARRANTY—IMPLIED WARRANTY.

In the absence of an express warranty on the sale of machinery, there is an implied warranty that the machinery is of merchantable quality and reasonably fit for the use for which it is intended.[2]

2. SAME—INSPECTION—DISCOVERABLE DEFECTS—ESTOPPEL.

It is the duty of the buyer of machinery under an implied warranty to inspect it within a reasonable time after its receipt and if defects are found constituting a breach of the implied warranty to refuse to accept it; and failure to inspect, or acceptance of the machinery after inspection, waives such defects as were discovered or were discoverable by reasonable inspection, though it does not waive latent defects.

---

[1] Rehearing denied December 10, 1907.
[2] As to implied warranty of fitness of property bought for special purpose, see note to *McQuaid* v. *Ross* (Wis.), 22 L. R. A. 187.

3. SAME—BREACH OF WARRANTY—DAMAGES—HARMLESS ERROR.
   Where, in an action for the price of certain machinery, defend-
   ant gives notice of recoupment and introduces testimony in
   support of his notice, a verdict for plaintiff for the full
   amount claimed shows that the jury did not reach the ques-
   tion of the defendant's damages and renders the alleged errors
   as to the measure of his damages immaterial.

Error to Wayne; Murphy, J. Submitted October 10,
1907. (Docket No. 29.) Decided November 5, 1907.

Assumpsit by the Buick Motor Company against the
Reid Manufacturing Company for goods sold and deliv-
ered. There was judgment for plaintiff, and defendant
brings error. Affirmed.

*George W. Radford,* for appellant.

*Bowen, Douglas, Whiting & Murfin,* for appellee.

In 1903 plaintiff was engaged in the manufacture of
automobiles, stationary and marine engines, with one fac-
tory at Flint and another at Jackson. The defendant
company was engaged in the business of assembling auto-
mobiles. Mr. Buick, the manager of plaintiff, had an in-
terview with Mr. Hunt, the manager of the defendant,
in which he explained to him a new automobile engine
and gear which he was designing. The negotiations re-
sulted in an order given by the defendant to plaintiff De-
cember 14, 1903, as follows:

"Above 1—Sample motor—32" over all—this motor to
be guaranteed to develop 12 H. P. at 900 Rev. Sundries—
2 plugs and carburetter. If this motor is satisfactory and
as guaranteed, order will be placed for quantities and of
same general specification. Price, 1st motor $150. Con-
tract for $135 each. Delvy. ·1st motor to be within two
weeks above date or sooner.

"Our requirements will be between 200 and 300 mo-
tors."

The engine was delivered February 13, 1904; was ex-
amined and tested by the defendant, and on February

15th it gave another order for ten motors, transmissions, and gears, which order reads as follows:

"You will please enter our order for motors and transmissions as follows: Two motors to be delivered March 1st, two motors to be delivered March 15th. Thereafter you will deliver to us two motors per week until ten have been delivered. Price of motor and transmission complete, carburetter complete and connected transmission to be equipped with self-controlled clutch, transmission brake and one universal joint, price of complete outfit to be two hundred fifteen dollars f. o. b. cars, Flint, Mich.

"It is also understood that these motors will be in detail same as the one now delivered and that same are guaranteed to be satisfactory under the specifications of the order which has been already given and on which you have delivered us the first motor.

"It is also understood that if these motors are delivered and are satisfactory that in the next 30 days we will give you specifications for a number of motors, specifications on delivery to be furnished later."

This order was accepted. Eight of the motors were furnished but not within the time specified. On March 21, 1904, defendant gave an order for 25 additional motors in the following language:

"If you can meet our demand on motors, delivering us the one you have already shipped, also one motor on the 28th of March and one on the 4th of April, and three or four weeks following you may enter our order for 25 additional motors."

This order was accepted. Motors, transmissions and a few other pieces were furnished, the price of which was $1,953.30. Defendant paid upon this on May 6th $550, and on June 10th, $200, leaving a balance of $1,203.30, for which this suit was brought.

Owing to difficulties unnecessary to mention, there was a considerable delay in shipping the goods at the times agreed upon, and on July 27, 1904, defendant wrote plaintiff canceling the balance of the order of February 15th, and also the order of March 21st, on the ground of delay in shipping the goods as agreed. There was also a delay

in payments for the goods which had been shipped and delivered and which the defendant had received and used. Many letters passed between the parties, the plaintiff excusing its delay and urging payment, and the defendant urgently insisting upon the delivery of the goods. Plaintiff's manager testified that he refused to deliver more motors and transmissions because defendant had not paid for the goods already shipped.

With its plea of the general issue defendant gave notice that the motors and transmissions were not made according to the specifications and representations of plaintiff; that there was delay in delivery, and claimed to recoup damages resulting from the defective machines, and the delay. The case was submitted to the jury who rendered a verdict for the plaintiff for the full amount claimed, and interest. Counsel for defendant assigns 140 errors, stating that he insists upon all, but that he will discuss only the principal ones.

GRANT, J. (*after stating the facts*). 1. Counsel for defendant insists that the order of December 14th and the oral representations and conversations had prior to and at the time it was given, constitute an express warranty; that the court should so have instructed the jury, or left it a question for the jury whether there were express warranties. The court did instruct the jury that the plaintiff expressly warranted to give the defendant an engine of 12-horse power. There was no claim that the engine did not develop 12-horse power, and the court so instructed the jury, to which instruction no objection is made. The court further instructed the jury that that accepted order was an incomplete contract, and permitted the defendant to fully disclose to the jury all the conversations between the agents of the respective parties in regard thereto. These conversations were had with defendant's agent Hunt. Nowhere in his testimony do I find any statement which can be construed into a guaranty, except this: "He (Buick) told me he would make the bore five inches,

would guarantee 12-horse power." This was the only guaranty contained in the first order, and the second order was the same in this respect.

At the request of defendant, plaintiff sent to it a description of the motor and the transmission. This description is quite lengthy, but I find nothing in it which can be construed into a warranty. These oral statements the judge instructed the jury were conditions precedent, and that while there was no express warranty, there was an implied one that the engines and transmissions should be merchantable in quality and reasonably fit for the use for which they were intended. The court explained this principle at great length to the jury, and left it to them as a question of fact to determine whether the motors and transmissions furnished were in accordance with the contract as contained in the order and the oral representations. The charge of the court upon this branch of the case was clear and explicit, and was all to which the defendant was entitled.

2. The court instructed the jury that it was the duty of the defendant to inspect and test the motors and transmissions within a reasonable time after receipt; that if the defendant did make such inspection and test and found defects which were a breach of the implied warranty, it was then its duty to refuse to accept them; that if it did not make such a reasonable inspection and test, it was estopped from setting up defects which would have been discovered had such reasonable inspection and test been made.

The court at great length also instructed the jury upon this question. He also instructed them as follows:

"If you believe from the evidence in this case that the defendant was compelled to replace all of the eight motors and transmissions furnished to it by the plaintiff by reason of poor workmanship, defective material or defects entering into the construction of the same, and if you believe that the defendant had not had the opportunity for inspection, or, having made a reasonable inspection, did not discover such defects, then and in that event, if you

further believe that the same were wholly lost to the defendant and useless to it in its business, the plaintiff could not recover against the defendant.   *   *   *

"If the Reid Manufacturing Co. inspected motors and transmissions as they were received, and gave them a proper test, and such test did not disclose some of the defects complained of, and the same were not discovered until after the motors and transmissions were installed in automobiles and sold to customers, it was not the duty of the Reid Manufacturing Co. to return such motors and transmissions, and by so using them defendant did not waive or lose its right to recoup damages against the plaintiff for such defects."

The court further instructed the jury that the machines were not delivered within the time provided for in the contracts, and that the plaintiff was liable in damages for such delay, unless the delay had been waived by the defendant, and added:

"The mere acceptance of the motors and transmissions, after the time specified, would not of itself, waive the claim for damages for delay by the defendant.

"The Reid Company had the right to require the Buick Co. to deliver the motors and transmissions ordered after the time had passed, and by exercising its rights and insisting on the delivery of motors and transmissions after such time, the Reid Co. did not waive its rights to whatever damages it suffered by the delay."

These instructions, while mainly clothed in the language of the circuit judge, were in effect the same as those preferred in the requests of counsel. Part of them were in the exact language.

It was the clear duty of the defendant, under the repeated decisions of this court, to examine and test the machines as they were delivered. It waived any defects discoverable by reasonable inspection and those which it did discover but accepted the goods after such discovery. It did not waive latent defects. *Talbot Paving Co.* v. *Gorman*, 103 Mich. 403 (27 L. R. A. 96); *Williams* v. *Robb*, 104 Mich. 247; *Day Leather Co.* v. *Michigan Leather Co.*, 141 Mich. 533; *Industrial Works* v. *Mitchell*, 114 Mich. 29.

Counsel for defendant cite a very large number of cases from other jurisdictions, but it is unnecessary to cite them. . The instruction was in accord with the rules established by those decisions. There was evidence from which the jury might easily find that the defects and delays were waived, and these questions were properly submitted to the jury.

3. The verdict of the jury is conclusive that they did not reach or consider the question of damages. Their verdict was for the full amount claimed. They must therefore have found either that the machines were such as the contracts called for, or that defects and delays were waived. It therefore becomes unnecessary to discuss and determine the questions raised as to the measure of damages.

Judgment affirmed.

McALVAY, C. J., CARPENTER, BLAIR, and MONTGOMERY, JJ., concurred.