$\ell$ ───────

## COLUMBUS & HOCKING COAL & IRON CO. v. SEE.

1. SALES—SAMPLE—ACCEPTANCE — REMEDIES FOR BREACH OF IMPLIED WARRANTY.

   The duty of a buyer of coal, of the same quality as a previous shipment which he purchased, is to inspect the merchandise upon receipt, and, if it is inferior, to reject it.

2. SAME—RECOUPMENT—DAMAGES—RESCISSION.

   He may not accept the goods and recoup damages for breach of an implied warranty of its quality.

3. SAME.

   Defendant, who sold the coal after discovering its inferior quality, became liable for the entire purchase price.

Error to Charlevoix; Mayne, J.   Submitted January 16, 1911.   (Docket No. 95.)   Decided May 3, 1912.

Assumpsit by the Columbus & Hocking Coal & Iron Company against Llewellyn See and Karl Wardrop, co-partners as the Charlevoix Coal & Wood Company, for goods sold and delivered.   Judgment for defendants. Plaintiff brings error.   Reversed.

*R. W. Kane*, for appellant.

*Lisle Shanahan* and *Halstead & Halstead*, for appellees.

BIRD, J. Plaintiff brought this action to recover the contract price of a cargo of coal sold to defendants in the summer of 1908. In the trial court the defendants prevailed, and the plaintiff has assigned error.

The plaintiff, being desirous of selling coal to defendants, sent them a sample car of coal. It proved to be as represented, and defendants ordered a cargo. This also proved satisfactory, and later in the same year they ordered a second cargo, which is the one in question. The order for the last cargo was as follows:

"August 26, 1908.
"THE COLUMBUS & HOCKING COAL CO.,
          "Columbus, Ohio.
"*Gentlemen:*
"Please forward to Toledo 600 tons Hocking coal to be the same as the last cargo shipped us. The schooner 'Oliver Mitchell' is now, or will be, in Detroit and will go from there to Toledo for cargo. We look for her to be in Toledo about the 2d of September. Do not have much over 600 tons as that is about all she will carry.
          "Yours truly,
               "CHARLEVOIX COAL & WOOD CO.,
                    "L. S. See."

The coal arrived and was found to be inferior in quality to the previous cargo. Soon after the defendants commenced to sell from this cargo, complaints began to come in from their customers that the coal was slaty and was of an inferior quality, and there was testimony that it was not worth more than two-thirds as much as the previous cargo. The defendants reduced the retail price 50 cents a ton to their customers and deducted it from the contract price and remitted the balance to plaintiff.

The defendants claim that there was an implied warranty that the second cargo was like the first in quality, and, inasmuch as it was inferior in quality, they had the

option to reject the coal or retain it and recoup their damages in this action. The plaintiff insists that there was no implied warranty which survived the acceptance of the coal; that the contract was executory, and when defendants had an opportunity to and did discover the inferiority of the coal, they could refuse to accept it. Failing to do this, the only other course open to them was to pay the contract price. Both counsel have made a strong presentation, and cited many cases in support of their respective contentions. Their differences arise out of the fact that there are two well-defined rules of law, either of which is applicable to the facts in this case. One rule is that in executory contracts for the sale of personal property, where there is an implied warranty, the warranty does not survive the acceptance of the goods; and the other is that the buyer may retain the goods, and either sue to recover his damages or recoup them when sued. 2 Mechem on Sales, § 1392.

In the case before us, both counsel agree it was a sale by sample. Whether it was a sale by sample or description is of little consequence in this case. It was an executory contract with an implied warranty that the second cargo was of the like kind as the first. It therefore became the duty of defendants, upon its arrival, to make an inspection of the coal to see if it corresponded in quality with the first cargo. It was their duty to discover, as promptly as they could, any defects in the coal, and, as soon as they discovered them, to reject the coal as not being in compliance with the contract. It appears, however, that after the defendants discovered the defects in the coal, they continued to sell it by reducing the price 50 cents per ton. No attempt was made to rescind the contract, but the coal was all disposed of at a reduced price. Under the holdings of this court, this must be regarded as an acceptance of the coal and a liability to pay the contract price. This court has arrayed itself with those courts which hold that in executory contracts, with an implied warranty, the duty is to inspect and reject, or pay the contract price.

*Farrington* v. *Smith*, 77 Mich. 550 (43 N. W. 927); *Talbot Paving Co.* v. *Gorman*, 103 Mich. 403 (61 N. W. 655, 27 L. R. A. 96); *Williams* v. *Robb*, 104 Mich. 242 (62 N. W. 352); *Buick Motor Co.* v. *Reid Manfg. Co.*, 150 Mich. 118 (113 N. W. 591); *Remy, Schmidt & Pleissner* v. *Healy*, 161 Mich. 266 (126 N. W. 202, 29 L. R. A. [N. S.], 139, 21 Am. & Eng. Ann. Cas. 74).

The first case cited is a good illustration of the rule. In that case defendants ordered of plaintiffs various qualities of teas, which, it was alleged, the plaintiff represented were as good as those defendant had on sale. The teas were ordered from samples. Afterward the defendant defended on the ground of the inferior quality of the tea shipped to him. There, as here, the defendant continued to sell the teas after he discovered their inferior qualities. In holding the defendant liable, the court said, in part:

"The defendant had the duty laid on him of finding out, with no unreasonable delay, the quality of the teas. As soon as complaints arose it was his duty to investigate at once, and to make up his mind what he would do. He had no right to offer them for sale thereafter, and at the same time repudiate the bargain. What he sold before being led to suspicion would not affirm the purchase for the remainder; but it was his business to make no further sales except on his own account, and it was his duty to notify plaintiffs at once of his decision."

The defendants having chosen to retain the coal and made a sale of a large portion of it, after they discovered the inferiority of it, they thereby became liable to pay the contract price, and the trial court was in error in refusing to direct a verdict for the plaintiff.

In view of the decision reached in this case, it will be unnecessary to discuss any of the other errors assigned.

The judgment of the trial court is reversed, and a new trial ordered.

Moore, C. J., and Steere, McAlvay, Brooke, Blair, Stone, and Ostrander, JJ., concurred.