DINOVO FRUIT CO. *v.* McCLINTICK & CO.

1. SALES—CONTRACTS—EXPRESS WARRANTY.
   A telegram from the buyer to the seller to ship a car of melons "if good stock," and the reply of the seller "will ship the car," *held*, not to create an express warranty as to quality.

2. SAME—IMPLIED WARRANTY.
   Where, pursuant to an order for a car of melons "if good stock," defendant shipped them, an implied warranty arose

that the melons should be of the kind plaintiff ordered, namely "good stock."

3. SAME—INSPECTION—RIGHT TO ACCEPT OR REJECT.

There being an implied warranty that the melons should be of good stock, it was the duty of plaintiff to inspect them upon their arrival, and, if in accordance with the contract, to accept and pay for them, if not "good stock," to reject them and advise defendant of the fact.

4. SAME—BREACH OF WARRANTY—RIGHT TO REPUDIATE LOST BY RESALE.

Plaintiff, by selling a portion of the melons after it had discovered that they were not "good stock," lost its right to repudiate its bargain and recover its damages for breach of the implied warranty.

Error to Osceola; Cutler (Hal H.), J. Submitted April 20, 1921. (Docket No. 107.) Decided June 6, 1921.

Assumpsit by Antonio Dinovo and others, copartners as the Dinovo Fruit Company, against Charles McClintick, doing business as McClintick & Company, for the breach of a contract for the sale of certain melons. Judgment for plaintiffs. Defendant brings error. Reversed.

*Gaffney, Miltner & Millington,* for appellant.

*Robert B. Savidge,* for appellees.

BIRD, J. This controversy arose over a contract which was made by the following telegrams:

"Delaware, Ohio.
Aug. 28, 1918.
"McCLINTICK & CO.,
"Evansville, Ind.
"Wire price of melons, twenty pound variety.
"DINOVO FRUIT CO."

"Evansville, Ind.
Aug. 28, 1918.

"DINOVO FRUIT CO.,
 "Delaware, Ohio.
"Car between 18 and 20 average 35c.
"MCCLINTICK & CO."

"Delaware, Ohio,
Aug. 28, 1918.

"MCCLINTICK & CO.,
 "Evansville, Ind.
"Ship car at your offer, if good stock.
"DINOVO FRUIT CO."

"Evansville, Ind.,
Aug. 28, 1918.

"DINOVO FRUIT CO.,
 "Delaware, Ohio.
"Will ship the car.

"MCCLINTICK & CO."

The melons were shipped and arrived at Delaware in due season. Defendant consigned the melons to itself, indorsed the bill of lading, attached it to a draft for $603.75 and sent it to the bank at Delaware with instructions to notify plaintiff. It also provided for inspection of the melons before acceptance and payment. Upon the arrival of the melons plaintiff went to the car and examined them. The top tier seemed to be satisfactory and no further examination was made. Plaintiff paid the draft and secured the bill of lading. Two days later when they were unloaded plaintiff claims that they found a large portion of them were green and unfit for use. Notwithstanding this it sold a quantity of them, receiving therefor $187.50. The balance of them it claims was a total loss. It began this suit to recover its damages.

Counsel were unable to agree upon the trial whether the contract contained an express or an implied warranty as to quality. The plaintiff insisted that the contract contained an express warranty, while the

defendant insisted that the warranty was an implied one. The trial court was of the opinion that the warranty was an express one and so instructed the jury. This is complained of as error and it is practically the only question of importance in the case.

If we are going to hold that this contract contained an express warranty as to quality, we should be able to point out, with some certainty, the particular statement or affirmation of defendant which makes it so. Neither in defendant's first message nor second one is there any statement or affirmation with reference to quality. Plaintiff adds to its second telegram that "if good stock" to ship the car. Defendant replies, "will ship car," but makes no reference to quality. We, therefore, are to deal with a contract wherein defendant makes no express statement or affirmation with reference to the quality of the fruit. So it is not a question of the construction of the language used but whether anything was said or done which raised an express warranty on defendant's part. But plaintiff's counsel argue that when defendant shipped the car in response to plaintiff's instructions to ship "if good stock," an express warranty arose in regard to the quality. We think this is going further than the language of the contract will permit. The effect of this was no different than as though plaintiff had wired defendant to send it a car of melons "if good stock" and defendant had sent the car without making any reply. It requires something more than this to create an express warranty.

We are of the opinion, however, that when defendant shipped the car of melons in response to the order, an implied warranty arose that the melons should be of the kind plaintiff ordered, namely—"good stock." This being true, it was the duty of plaintiff to inspect the melons upon their arrival, and if in accordance with the contract it was its duty to accept

and pay for them. If they were not "good stock" then it had a right to reject them and advise the defendant of the fact. *Farrington* v. *Smith,* 77 Mich. 550; *Talbot Paving Co.* v. *Gorman,* 103 Mich. 403 (27 L. R. A. 96); *Williams* v. *Robb,* 104 Mich. 242; *Buick Motor Co.* v. *Manufacturing Co.,* 150 Mich. 118; *Remy, Schmidt & Pleissner* v. *Healy,* 161 Mich. 266 (29 L. R. A. [N. S.] 139, 21 Ann. Cas. 74); *Columbus, etc., Iron Co.* v. *See,* 169 Mich. 661; *Gill & Co.* v. *Gas Light Co.,* 172 Mich. 295.

But it is argued that the quality of the melons was not discovered until they were unloaded a day or two after acceptance and payment. Plaintiff was given permission to inspect the melons before acceptance and payment. If they were not inspected sufficiently before acceptance to discover the quality it was Dinovo's fault, due to his disinclination to dig down to the bottom of the car. But this question is not very important in this case because after plaintiff was fully advised as to the defects it sold a portion of the melons, receiving therefor $187.50. This plaintiff had no right to do unless it intended to keep and pay the contract price therefor. In *Farrington* v. *Smith, supra,* this question was considered in a case where certain teas had been sold after knowledge that they were not in accordance with the sample from which they were purchased. This court said:

"The defendant had the duty laid on him of finding out, with no unreasonable delay, the quality of the teas. As soon as complaints arose it was his duty to investigate at once, and to make up his mind what he would do. He had no right to offer them for sale thereafter, and at the same time repudiate the bargain. What he sold before being led to suspicion would not affirm the purchase for the remainder; but it was his business to make no further sales except on his own account, and it was his duty to notify plaintiffs at once of his decision."

The proofs in the present case show that plaintiff had ample opportunity to inspect the melons before accepting and paying for them. If it made only a partial inspection, it was its own fault. It certainly had no right to repudiate its bargain after it had sold a portion of the melons with knowledge that the balance of them were defective.

The judgment must be reversed and a new trial ordered, with costs to defendant.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.