REED v. DAVID STOTT FLOUR MILLS.

1. SALES—CONTRACTS—BREACH—RESCISSION.
     Where plaintiff received an inferior grade of flour than he had purchased and paid for, and upon notification and demand for correction defendant refused to do anything, plaintiff had a right to rescind the contract and sue for the purchase price.

2. SAME—WARRANTY—IMPLIED WARRANTY—BRANDS.
     Where plaintiff had purchased from defendant certain brands of flour which was guaranteed A No. 1, a contract to buy a quantity of the same brands carried upon its face an implied warranty that it would be of like quality as previous shipments of those brands.

3. SAME — EVIDENCE — ADMISSIBILITY — GUARANTY — APPEAL AND ERROR—DIRECTED VERDICT.
     The admission in evidence of a former contract containing a written guaranty as to quality, *held*, not reversible error, where the evidence aside from said contract justified a directed verdict for plaintiff.

On implied warranty of fitness of article bought for special purpose, see notes in 22 L. R. A. 187; 15 L. R. A. (N. S.) 868; 31 L. R. A. (N. S.) 783; 34 L. R. A. (N. S.) 737.

4. SAME—EVIDENCE—IDENTITY.
    Refusal to receive in evidence the loading slip, which was
    made at the time the flour was loaded into the car, was
    not error, where it was not identified by the person who
    made it or knew of the facts which it purported to show.

Error to Muskegon; Vanderwerp (John), J.   Submitted October 19, 1921.   (Docket No. 142.)   Decided December 21, 1921.

Assumpsit by John O. Reed against David Stott Flour Mills, Incorporated, for breach of a contract for the sale of flour.   Judgment for plaintiff on a directed verdict.   Defendant brings error.   Affirmed.

*Willard J. Turner*, for appellant.

*Cross, Foote & Sessions*, for appellee.

BIRD, J.   On May 1, 1920, defendant entered into a written contract with plaintiff to ship him 210 barrels of "Princess" flour, and on June 24, 1920, it entered into another contract with plaintiff to ship him 100 barrels of "Norseman" flour.   The flour arrived in Montague on July 31, 1920.   Plaintiff at once accepted the flour and paid defendant's draft for the sum of $4,097.50.   He sold a few barrels to his customers and complaints as to the quality of the flour began to come in.   Plaintiff sent for McCarthy, defendant's agent in that territory and the person who sold the flour to him.   McCarthy came and went with plaintiff to two bakers and investigated the quality of the flour.   McCarthy compared the flour with the samples in his selling case and stated to plaintiff and the bakers it was not the flour that they had purchased, that it was an inferior grade of flour and that he would replace it with the flour which they had bought.   The bakers referred to testified that the flour was of a grayish color, and that they could not

make their product out of it as they had theretofore done with those brands. McCarthy did not replace the flour as promised, and defendant refused to make the matter good. Plaintiff then rescinded the contract on the ground of fraud and brought suit to recover the money which he had paid for it. Defendant offered no proof as to the quality of the flour, and upon motion the trial court directed a verdict for plaintiff for the amount he had paid for the flour less a small portion which he had sold.

Defendant complains that there was a fatal variance between plaintiff's pleadings and proofs and that the declaration does not support the case which plaintiff made, nor does it support the verdict. It appears that plaintiff had theretofore purchased other lots of "Princess" flour of defendant and had sold it out to his customers as high grade flour and no complaints were made. On February 4, 1920, plaintiff took over a contract for a large number of barrels of "Princess" flour which McCarthy had made with Quackenbush, the village baker. Upon this contract McCarthy indorsed on the contract in lead pencil that it was guaranteed to be A No. 1 flour. Plaintiff's counsel offered this contract and it was received for the purpose of showing the guaranty, and that it was a continuing one reaching through other transactions up to the contracts in suit. This was seriously objected to by defendant, it being defendant's contention that that was a contract that had been fulfilled and had nothing to do with the present controversy set out in the declaration.

Passing for the moment this contention we think it appeared by plaintiff's proof, and to which there was no denial, that he purchased 210 barrels of "Princess" flour and 100 barrels of "Norseman" flour. The proofs show that these brands represented high grades of flour. The proofs also show that instead of getting

these two brands of flour plaintiff got an inferior grade of flour which he could not sell. As soon as he learned of this inferior quality he notified defendant and made an effort to have it corrected. The defendant refused to do so. Under these circumstances plaintiff had a right to rescind the contract. He certainly had a right to insist upon having the kind of flour he purchased. The contract carried upon its face an implied warranty that the flour sent was of a like quality as previous shipments of those brands. When plaintiff learned that the shipment was not of the quality of these brands, which he had heretofore purchased, he at once notified the defendant and rescinded the contract. If the court was impressed with this testimony plaintiff was entitled to recover what he had paid for the flour, independent of the guarantee indorsed on the contract of February 4th. *Farrington* v. *Smith*, 77 Mich. 550; *Columbus, etc., Coal & Iron Co.* v. *See*, 169 Mich. 661.

The contract of February 4th, upon which the guarantee was indorsed, was received in evidence. How far this affected the court's conclusion we cannot say. His charge in directing a verdict does not indicate that he was influenced by it. But whether the guaranty was considered or not he reached the right conclusion under the proofs. Both counsel requested a directed verdict, defendant at the conclusion of plaintiff's proofs, and plaintiff at the conclusion of all the proofs.

Under the view that the proofs justified a recovery outside of the contract of February 4th, it will be unnecessary to consider the several questions of agency raised by defendant.

Defendant complains because the trial court refused to admit in evidence the loading slip, which was made at the time the flour was loaded into the car at Detroit. It was not proven and the court rejected

it. We think he was right, as it was not identified by the person who made it or knew of the facts which it purported to show.

We are of the opinion that under plaintiff's proofs he was entitled to recover. The other questions need not be considered.

The judgment will be affirmed.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK, and SHARPE, JJ., concurred. FELLOWS, J., did not sit.