SYMONS *v.* GREENWOOD, ATKINSON, ARMSTRONG CO.

SALES—ACCEPTANCE—CONTRACTS—WAIVER.

> Although overcoats delivered to defendant were not the kind ordered, and were not delivered within the specified time, defendant is liable, in an action for the purchase price, where, without consent of the seller, he altered some of them and attempted to sell them, since he thereby waived strict performance of the contract.

Error to Wayne; Dingeman (Harry J.), J.   Submitted April 7, 1922.   (Docket No. 40.)   Decided June 5, 1922.

Assumpsit by Samuel Symons against the Greenwood, Atkinson, Armstrong Company for goods sold and delivered.   Judgment for plaintiff on a directed verdict.   Defendant brings error.   Affirmed.

*J. Shurly Kennary,* for appellant.

*Finkelston & Lovejoy* and *H. C. Chilson,* for appellee.

MOORE, J.   Each of the parties to this litigation asked for a directed verdict.   The trial judge charged the jury as follows:

"Gentlemen of the jury:   By wire and letter the defendant ordered of the plaintiff 110 42-inch length United States regulation overcoats for delivery in Detroit not later than Tuesday, November 26, 1918. This order was accepted by plaintiff.   The coats were for use in a Thanksgiving day parade.   The plaintiff did not deliver the overcoats in Detroit until subsequent to Thanksgiving day, delivery being made in two lots, one of two trunks and one of three trunks.

"On November 29th that being the day following Thanksgiving day, and at a time when the two trunks

On waiver of right to rescind for breach of warranty or noncompliance with contract, see note in 36 L. R. A. (N. S.) 468.

had been delivered to the defendant, the defendant wrote the plaintiff among other things as follows:

" 'We have opened the first two cases and we find that they are not as ordered—not one of them 42 inches as we. designated in our order; 12 of them were half lined and colors impossible to use. In fact, they look like a very poor lot of merchandise. Awful sorry this happened and we think you did the best you knew how, but the fact remains that they are not what we ordered—they are all mixed colors of all kinds. Kindly advise us what disposition to make of them and oblige.'

"The complete shipment was received on Saturday, November 30th. On that day defendant wrote plaintiff:

" 'We have just received the three trunks this morning. I do not know what we will do with our customers, they are very sore. We are returning to you today 17 coats that are absolutely no use to us. We think we may be able to get rid of these coats Monday, if not all of them, as many as we can. It is unfortunate—we know you did all you could, but that does not help in the least under the conditions. Rather afraid they got track of some other coats, but we will do the best we can and see if we cannot get rid of them between now and Monday. Every one of the coats will have to be shortened if I get rid of them which I think is possible. They are all 47 and 48 inches long. I would not have returned the 17, but would not care to offer them to our customer under any circumstances.'

"On December 4th the defendant wrote plaintiff as follows:

" 'We have yours of the 2nd inst. and regret exceedingly the conditions, and do not think that we do not appreciate your efforts, but the fact still remains that we ordered 110 coats, to be 42 inches long, delivery to be made so we could deliver them for the Thanksgiving parade, and unfortunately they did not arrive. We returned 17 of the coats for the simple reason that we could not use them at any rate, they are not what we want, in fact, all of the coats will have to be shortened and it looks now as though we will be able to sell them. If it had been anybody but yourself that we purchased these coats from we would have returned them all as they do not fill the bill as to length, etc. We appreciate your efforts and will shorten them as they will not accept them unless they are shortened—they all want 42-inch coats. I know of no arrangement made with you

that we were to keep these coats, that they were not to be returned. You wrote us to that effect, but we had no opportunity to answer simply because you left New York with the garments. It is all right, we will retain the 102 coats, and thank you very much for your trouble.'

"On December 5th the defendant wrote plaintiff as follows:

" 'Since writing you yesterday, when we felt we had a reasonable assurance that we might possibly get rid of the coats, we shortened 3 of them, but the whole effect of the coat is spoiled— it has no appearance of a short coat whatsoever, and our customer absolutely refuses to accept them. There is nothing we can do, unfortunately, but to send them back. Wire us as to disposition.'

"A few of the coats were shortened and some effort was made to sell them. Plaintiff refused to accept the return of the 17 coats when tendered to him. This action is now brought to recover the purchase price of the coats and a motion has been made on behalf of both plaintiff and defendant for a directed verdict, it being agreed that the questions presented are ones of law rather than of fact. It must be taken as an established fact that the plaintiff in this case did not perform his contract either with respect to the kind of goods ordered or as to the time of delivery and if he is entitled to a verdict here, it must be based upon some act of the defendant which amounted to a waiver of strict performance of the contract. There can be no question but that the buyer may waive the provisions of the contract as to quality, kind or quantity; he may accept and become bound to pay for goods he never ordered; he may accept more or less than the stipulated quantity; he may accept goods of a different kind than those agreed upon; he may accept at a time or place other than that specified, and he may signify this acceptance not only expressly but impliedly and his implied acceptance may be found to be given, where, without dissent within a reasonable time he receives and retains goods delivered not in conformity to the contract or where he subsequently deals with them as owner.

"Defendant shortened some of the goods in question without the plaintiff's consent, and expressly stated in the letter of December 4th that they would retain 102

of the coats. It seems to me that under the circumstances the defendants must be held to have waived the strict performance of the contract in question, insofar as the 102 coats are concerned. I therefore direct you to find a verdict for the plaintiff for the sum of $2,244, less 5% allowance conceded by plaintiff with interest at 5 per cent. from December 4th or total of $2,297.60. You may rise in your seats and the clerk will take the verdict."

Judgment for plaintiff for $2,297.60 was entered August 25, 1921. The defendant brings the case here by writ of error. The plaintiff contends the judgment is too small but has not brought error.

The defendant contends that he rejected the goods received as not being in compliance with the contract; that he thereafter made an offer to the plaintiff to retain part of the goods; that because this offer was not accepted, in fact rejected, the defendant is not liable to the plaintiff for any part of the goods. The defendant's chief reliance is upon *Jones* v. *Bloomgarden*, 143 Mich. 326.

The trouble with the contention of the appellant is that it is not borne out by the record. Not only did the defendant write plaintiff December 4th, "It is all right, we will retain the 102 coats and thank you very much for your trouble," but proceeded to shorten some of the coats and also put them all in stock and offered them for sale, and would have sold them if it could have found a customer, according to the testimony of the president of the defendant company, who was called as an adverse witness by the plaintiff.

The trial judge was justified in directing a verdict. See Mechem on Sales (1901 Ed.), § 1374; *Farrington* v. *Smith*, 77 Mich. 550; *Rubin* v. *Crowley, Milner & Co.*, 214 Mich. 365.

Judgment is affirmed, with costs to the appellee.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.