STATE OF MINNESOTA v. N. P. CLARKE.[1]

June 2, 1896.

Nos. 10,095—(60).

**Manufacturers—Who are—Place of Taxation.**

    G. S. 1894, § 1516, provides that personal property pertaining to the business of a manufacturer shall be listed for taxation at the town or district where the business is carried on. Section 1529 defines who are manufacturers. *Held*, for the purposes of the statute, a person may be a manufacturer though he does not own or operate the manufacturing plant, but contracts with the owners thereof to have his materials manufactured for him by them; and he is carrying on a manufacturing business at the place of such manufacture, so as to give his said materials a situs for taxation at that place, though he resides elsewhere in this state, and owns and operates a similar manufacturing plant at the place of his residence, if he is in fact carrying on a sufficiently separate business at the place where such third parties are so manufacturing for him. *Held*, that in that case he is taxable at the last-named place on his materials in transit to that place, to be there so manufactured for him by such third parties.

Proceeding in the district court for Hennepin county to enforce payment of tax upon personal property. The court, Smith, J., having

[1] Reported in 67 N. W. 1144.

ordered judgment against defendant in the sum of $1,395.67, the questions mentioned in the opinion, at the request of defendant, were certified to this court. Answered affirmatively.

*A. H. Nunn*, for plaintiff.

*W. E. Hale* and *Welch, Hayne & Conlin*, for defendant.

CANTY, J. In the year 1883, 15,000,000 feet of pine logs were assessed for taxation to N. P. Clarke, in Hennepin county, in this state. He failed to pay the tax levied thereon, and on September 20, 1884, a citation was issued out of the district court of that county, citing him to show cause why judgment should not be entered against him for the tax. He appeared and answered, and the proceeding remained pending some eleven years, until 1895, when it was tried by the court, and judgment ordered for the state. The claim of Clarke is that he was not legally assessed for these logs in Hennepin county, but that the proper place to assess him for the same was at his residence, in Stearns county. At his request, the court certified two questions to this court for its decision on the facts stated in the certificate.

It is stated that Clarke is, and since 1856 has been, a resident of St. Cloud, in Stearns county; that for some years prior to August 12, 1881, he and one McClure were engaged in the lumber business, as partners, under the firm name of Clarke & McClure, and operated lumber yards at said St. Cloud, at Minneapolis, in Hennepin county, and at Little Falls, in Morrison county; that, during all the time they were so engaged in business, they cut pine saw logs on the northern tributaries of the Mississippi river, in this state, and floated them down that river, stopping a part of them at Little Falls, a part at St. Cloud, and the balance were floated down to Minneapolis.

"And said logs were manufactured into lumber at said several places; that said McClure died August 12, 1881, and said Clarke continued to carry on the business of said firm as the surviving partner, under the style of Clarke & McClure, at the city of Little Falls and city of St. Cloud until the spring of 1882, and at the city of Minneapolis until June 1, 1883; that said pine logs were floated down the Mississippi to and manufactured at Minneapolis into lumber, which was sold by said Clarke & McClure and said N. P. Clarke, as surviving partner aforesaid, at the city of Minneapolis; that, after the spring of 1882, the business at St. Cloud and said Little Falls was carried on and owned by said N. P. Clarke; that after June 1, 1883,

said Clarke continued to carry on the business heretofore carried on by him as surviving partner, under the firm name of Clarke & McClure, in his own name, and as his own business, at which date he purchased the McClure interest; that, during the winter and logging season of 1882 and 1883, said N. P. Clarke cut a large quantity of pine logs in the northern part of this state, on the waters tributary to the Mississippi, and that said N. P. Clarke was the owner of said logs when cut, and in the spring and summer of 1883, prior to the 1st day of May, 1883, he had the same in the boom limits of the Mississippi and Rum River boom on said Mississippi river; that said boom limits then extended from Minneapolis to Brainerd, in said state; that, of the logs cut by said Clarke in said winter, 20,-000,000 feet thereof were designed and intended by said Clarke to be delivered at Minneapolis, there to be manufactured into lumber, and the lumber sold from that place; that in the month of March, 1883, said N. P. Clarke made and entered into a contract with Cole & Weeks, of said Minneapolis, Minnesota, who operate and run a sawmill at said city, for the manufacture into lumber of said 20,000,000 feet of logs, for the purpose of enhancing the value of said logs, and that said logs were, pursuant to said contract, sawed and manufactured into lumber at said city of Minneapolis, by said Clarke; that said manufacture began the last of April or the first of May, 1883, and what was manufactured prior to the 1st of June, 1883, went into the lumber account of said Clarke & McClure, and what was manufactured after said date, to exceed 15,000,000 feet, were manufactured on account of said Clarke, and paid for by him individually; that all of said lumber so manufactured after June 1st, 1883, was by said Clarke piled and kept for sale in the lumber yard of said N. P. Clarke, at the city of Minneapolis; that prior to said June 1st, 1883, said Clarke individually never conducted or owned any lumber yard in said city;   *   *   *   that on the 1st day of May, 1883, only a small portion of the pine saw logs cut for manufacture at the city of Minneapolis· were within the limits of said Hennepin county;   *   *   * that said Clarke continued to be engaged in the lumber business until the spring of 1895; that the lumber business carried on by said Clarke & McClure and said N. P. Clarke at· the city of Minneapolis was one continuous business of manufacturing and selling lumber, but that said N. P. Clarke nor said Clarke & McClure ever owned or operated any sawmill for manufacture of lumber at said city of Minneapolis, but that all logs owned by them were during all the time they or either of them were engaged in business manufactured by other persons under contract." The court further certified that it found certain findings of fact, from which we quote the following: "That 20,000,000 feet of said logs, or more, were designed by said Clarke to be delivered at Minneapolis, and there to be manufactured into lumber, and the lumber sold from that place, and that said logs were afterwards, during the season of 1883, sawed into lumber and manufactured at the city of Minneapolis, by said Clarke in his own name; that the manufacture of the same commenced on the last of

April or the forepart of May, 1883; that what was manufactured prior to the first of June, 1883, went into the lumber account of said Clarke & McClure, and after that date to the account of said Clarke, and that all of said lumber so manufactured was piled and kept for sale and sold from the city of Minneapolis by said Clarke; * * * that the contract for the manufacture of said logs into lumber at the city of Minneapolis was made in March, 1883, by the defendant in his own name; that all of the logs were manufactured under said contract during the summer season of 1883, and the lumber manufactured therefrom was piled and sold from the city of Minneapolis."

The following questions were certified: "First. Was the defendant, N. P. Clarke, on the first day of May, 1883, a manufacturer in Hennepin county, Minnesota, within the meaning of section 1529 of the Statutes of 1894, he not at that time owning or operating any manufacturing establishment in said Hennepin county? Second. Were the logs beyond the boundaries of Hennepin county on May 1, 1883, properly assessable against the defendant in Hennepin county, as a manufacturer, within the meaning of said statute, he then residing in Stearns county, Minnesota, and there owning and operating a manufacturing business, to wit, the manufacture of lumber?"

We are of the opinion that both questions should be answered in the affirmative. Respecting the first question, it is contended by defendant that because Clarke owned and operated no manufacturing plant in Minneapolis on the 1st of May, 1883, while he did at St. Cloud, where he resided, he was not a manufacturer at Minneapolis, so as to be taxable there. We cannot agree with counsel. Section 1516, G. S. 1894, provides: "The personal property pertaining to the business of a merchant or of a manufacturer shall be listed in the town or district where his business is carried on." Section 1529 defines the term "manufacturer" as follows: "Every person who purchases, receives or holds personal property of any description, for the purpose of adding to the value thereof by any process of manufacturing, refining, rectifying, or by the combination of different materials with a view of making gain or profit by so doing, shall be held to be a manufacturer." It certainly is not necessary under this definition that, to be a manufacturer, he must himself operate or own the manufacturing plant. The manufacturer may carry on the same kind of manufacturing business at several different places within this state in such a way that, for the purposes of this statute, the

business at each place will be a separate business.    Clarke v. County of Stearns, 47 Minn. 552, 50 N. W. 615.    The business carried on by Clarke at Minneapolis on May 1, 1883, had sufficiently the characteristics of a separate business to give it and the property pertaining to it a situs for taxation at that place.    He cut during the prior winter, of his own logs, 20,000,000 feet, which he intended to have manufactured at that place.    He followed this up by making a contract in March to have these logs manufactured into lumber for him at that place; and the manufacture of the same was actually commenced on the last of April or first of May, 1883, the day on which the property was assessable.    Not only is this so, but the court was justified in finding from the evidence and circumstances stated that the business of Clarke was not a new business just commenced, but merely the succession to, and continuation in his own individual name of, the well-defined and long-continued business of Clarke & McClure, the situs of which had always been at Minneapolis.    It is hardly necessary to discuss further the second question.    It sufficiently appears that the logs in question, which were beyond the boundaries of Hennepin county on May 1, 1883, "pertained" to the manufacturing business at Minneapolis.    They were in the Mississippi river in transit to that place, for the purpose of being there manufactured in that business.

Both questions are answered in the affirmative, and the case is remanded to the court below for further proceedings.