EBERHART STEEL PRODUCTS CORPORATION
*v.*
GENERAL TUBE COMPANY

1. SALES—IMPLIED WARRANTY—PROOF.

An implied warranty of fitness arose under the Uniform Sales Act where defendant, an assembler of automobile seat belt buckles, purchased from the plaintiff component parts which were defective in that they were improperly designed by plaintiff and failed to meet required performance standards, where the buyer was without an engineering staff, and where the plaintiff took part in the specifications and requirements discussions between defendant and the ultimate purchaser (CL 1948, § 440.15).

2. SALES — IMPLIED WARRANTY — DUTY OF INSPECTION — LATENT DEFECTS.

Evidence of the existence of an implied warranty of fitness under the Uniform Sales Act was sufficient where the defects in automobile seat belt buckles designed and produced by plaintiff and assembled by defendant were latent, where no blueprints of the parts existed, where the plaintiff failed in its agreement to build and supply to the defendant the necessary testing gauges for proper inspection, and where defendant did make certain inspections (CL 1948, § 440.15).

3. SALES—SALE BY SAMPLE—IMPLIED WARRANTY OF FITNESS.

Plaintiff's claim that its transaction with defendant was solely a sale by sample is without merit where evidence that plaintiff

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] Construction and effect of standard new motor vehicle warranty. 99 ALR2d 1419.
[1] 46 Am Jur, Sales §§ 332–361.
[2] 46 Am Jur, Sales § 345.
[3] 46 Am Jur, Sales § 363.
[4] 53 Am Jur, Trial §§ 523, 565, 835.
[5] 47 Am Jur, Setoff and Counterclaim §§ 104–106.

designed the component parts, that plaintiff agreed to meet the specifications and requirements of the ultimate purchasers' engineers, that defendant was without an engineering staff at this time, and that plaintiff failed to build and supply certain testing gauges necessary for proper inspection was presented to the jury (CL 1948, § 440.16).

4. APPEAL AND ERROR—INSTRUCTIONS TO JURY—WAIVER.

Errors in the instruction to the jury are deemed to have been waived where counsel had ample opportunity to call any errors to the attention of the court and failed to do so.

5. TRIAL—COUNTERCLAIM—FORM OF VERDICT.

Absence of a verdict for the plaintiff where the defendant prevails in his counterclaim, even though the defendant admitted his liability on the plaintiff's original claim, is likely a reflection of a final sum after all claims had been considered, especially where the plaintiff failed to object at trial to the form of the verdict.

Appeal from St. Joseph, Mark S. Andrews, J. Submitted Division 3 February 4, 1970, at Lansing. (Docket No. 7,188.)   Decided October 28, 1970.

Complaint by Eberhart Steel Products Corporation against General Tube Company for damages for breach of contract.  Counterclaim by General Tube Company for breach of warranty.  Judgment for defendant on its counterclaim.  Plaintiff appeals.  Affirmed.

*Bodman, Longley, Bogle, Armstrong & Dahling* (by *Theodore Souris* and *Lloyd C. Fell*), for plaintiff.

*Dresser & Dresser* (by *Raymond H. Dresser, Jr.,* and *John T. Svendsen*), for defendant.

Before: Lesinski, C. J., and McGregor and V. J. Brennan, JJ.

McGregor, J.   This action was begun by Eberhart Steel Products Corporation, seeking damages for the unpaid purchase price, $47,890, for parts delivered and other consequential damages.   Defendant admitted that the purchase price had not been paid, but counterclaimed, asserting that the parts manufactured were not as warranted, and claimed damages of $600,000.   A jury trial in circuit court resulted in a verdict of $150,000 for the defendant.   Plaintiff appeals as of right both the judgment and the denial of its motion for a new trial.

Plaintiff had been selling parts for automobile seat belts to defendant since 1956.   Defendant assembled the component parts into buckles, added the webbing, and sold the assembled seat belts to various divisions of General Motors Corporation.

Late in 1962, it became necessary to produce a new model seat belt and buckle because the old model was too bulky and old-fashioned.   At this time, defendant began to negotiate with Fisher Body Division of General Motors concerning a new seat belt.   Ultimately, the plaintiff's president designed and made samples of a new streamlined buckle which he and two of defendant's corporate officers took to Fisher Body and left to be tested.

Defendant's officers and Mr. Eberhart, president of plaintiff corporation, during the time in which work was progressing on the new buckle, made several visits to General Motors.   The defendant was without benefit of any engineers until January of 1964.

Trial testimony indicated that whenever Mr. Eberhart consulted with the General Motors engineers, it was always in the presence of an officer

of the defendant corporation. Defendant corporation officers testified that, as a result of these meetings, Mr. Eberhart was fully informed as to the requirements for the new seat belt buckle in order to be satisfactory to General Motors both in specifications and as to expected performance standards. Eberhart himself admitted he was familiar with the requirements of both General Motors and defendant.

Plaintiff began to manufacture seat belt buckle parts, which were assembled by defendant and sold to General Motors. On October 29, 1963, after difficulties in the consumer use of the seat belt buckles, assembly of the seat belts was halted at the request of General Motors. After the return of 80,000 belts to the defendant and agreements between the parties and Fisher Body engineers, modifications were made in the buckle parts. Defendant sold a reduced number of seat belts to General Motors for the remainder of the model year, but the contract was not renewed for the following years. Defendant subsequently went out of business.

Defendant claimed that buckle parts were purchased from the plaintiff by sample, and further, that plaintiff warranted the parts would (1) be reasonably fit for the purposes intended, and (2) operate in the same manner as the parts in the samples.

Plaintiff asserts that it neither expressly nor impliedly made any such warranties and that the only governing and controlling law is the Uniform Sales Act, CL 1948, § 440.16 (Stat Ann 1959 Rev § 19.256)[1] outlining a sale by sample.

The instant case is a fine illustration of the complexities and problems inherent in business dealings

---

[1] This was the former Uniform Sales Act now replaced by a part of Uniform Commercial Code, MCLA § 440.2101 *et seq.* (Stat Ann 1964 Rev § 19.2101 *et seq.*).

in which none of the parties embody the alleged agreements in writing.

Defendant asserts that the implied warranty contained in the Uniform Sales Act, CL 1948 § 440.15(1), (2) (Stat Ann 1959 Rev § 19.255[1], [2]), was properly invoked by the proofs submitted and that abundant evidence showed that these warranties were breached.[2]

Examination of the alleged defects would serve to illuminate the arguments presented herein. Defendant contends that the major defects contained in the buckle were webbing slippage under stress, as well as improper locking, that these defects were alleged to have been the result of improper design, and because the parts were not manufactured to their required tolerances, and in fact could not be manufactured to such close tolerances.

Testimony was introduced to the effect that defendant corporation was without the benefit of any engineering staff at the beginning of the model year, and that it did rely upon Eberhart's skill and judgment in designing and producing satisfactory seat belt buckles. It was alleged that plaintiff corporation, through its president, Ray Eberhart, was fully aware of the specifications needed and required by the ultimate consumer, General Motors. Furthermore, testimony demonstrated that whenever Mr. Eberhart consulted with General Motors' engineers, it was always in the presence of an officer of the defendant corporation.

Plaintiff corporation counters by saying that, if the buyer has examined the goods, no implied war-

---

[2] "(1). Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose." Uniform Sales Act, CL 1948, § 440.15(1) (Stat Ann 1959 Rev § 19.255[1]).

ranty exists as to defects which such examination ought to have revealed.[3] In support of this argument, plaintiff alleges that there is a duty incumbent upon the defendant to inspect these parts, citing *Salzman* v. *Maldaver* (1946), 315 Mich 403; *Remy* v. *Healy* (1910), 161 Mich 266; *Achenbach* v. *Mears* (1935), 272 Mich 74. Aside from whether these cases cited by plaintiff imposed a duty of inspection, testimony was presented that the defects complained of were primarily latent and could not have been discovered. Furthermore, although defendant made certain inspections, the record indicates that there were no blueprints at the beginning of the model year, and that plaintiff corporation had agreed to build and supply certain testing gauges necessary for proper inspections, but failed to do so. Sufficient evidence was adduced at trial to invoke this implied warranty, and the trial judge properly submitted it to the jury.

Plaintiff's claim that this transaction was governed only by sale by sample is without merit. It does not appear from the above discussion that the parties to the transaction contracted solely with reference to a representative exemplar of the commodity in question. *Hall* v. *Puget Sound Bridge and Dry Dock Company* (1965), 66 Wash 2d 442 (403 P2d 41). See also, *Livingston Shirt Corporation* v. *Great Lakes Garment Manufacturing Company* (1958), 351 Mich 123.

We have reviewed plaintiff's allegations that there was no evidence supporting the express warranties as alleged, but we cannot find that the judge's submission to the jury on this issue was erroneous. Fur-

---

[3] "If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed," Uniform Sales Act, CL 1948, § 440.15(3) (Stat Ann 1959 Rev § 19.255[3]).

thermore, there was more than sufficient evidence to support the jury's verdict.

Plaintiff also alleges numerous substantive errors in the instructions which precluded the jury from rendering a fair verdict. Although plaintiff had ample opportunity to call any alleged errors to the attention of the court, counsel failed to do so, and they are deemed to have been waived. *Hunt* v. *Deming* (1965), 375 Mich 581, 584.

Plaintiff's final contention is that there should have been two judgments, inasmuch as the defendant had admitted liability. Although one judgment was entered, this figure is likely to be a reflection of a final sum, after all claims had been considered, since defendant had asked for $600,000. There is no indication that plaintiff's claim was not considered by the jury; in addition, plaintiff made no objection at trial to the form of the jury verdict.

Trial court is affirmed. Costs to defendant.

All concurred.