JONES v. BLOOMGARDEN.

1. Sales — Perishable Property — Rejection — Duty of Purchaser.

Sections 739, 10360, and 10361 of the Compiled Laws, providing the procedure in case of levy or attachment of perishable goods, have no application to the duty of a buyer of perishable goods, which prove, on arrival, to be defective.

2. Same—Reshipment.

In assumpsit for the price of goods sold, it is error to charge that it was the buyer's duty, if he refused to accept the goods on arrival, to reship them to the seller.

3. Principal and Agent — Authority — Evidence — Holding Out.

Holding one's self out as agent is no evidence of authority as against the principal.

4. Brokers — Sale of Perishable Goods — Duty on Refusal by Buyer.

Brokers who have sold perishable goods have no authority, on the arrival of the goods and their proving defective, to make a contract with the buyer on behalf of the seller to annul the contract of sale and authorize the buyer to sell the goods for the account of the seller.

5. Sales—Contracts—Time of Shipment—Waiver of Breach.

By inspecting and accepting goods on their arrival, with knowledge that they were shipped at a later time than agreed in the contract of sale, the breach as to time of shipment is waived.

6. Same—Inspection—Time.

A buyer of goods to be shipped is entitled to a reasonable time and opportunity to inspect them before acceptance, the time within which he must act depending upon the circumstances, including the character of the goods; a more prompt inspection being required of perishable property.

7. Same—Latent Defects.

An inspection sufficient in law is not conclusive upon the rights of a buyer where there are latent defects afterwards discovered.

8. SAME—ACTION ON CONTRACT—DEFECTIVE GOODS—RECOVERY ON QUANTUM MERUIT.

Where the buyer of goods, on their arrival, makes prompt inspection, such as is customary and sufficient to determine the character of the goods, and latent defects are afterwards discovered, which existed at the time of shipment, the seller cannot recover upon the contract of sale, but only on a count of quantum meruit.

9. SAME—PERISHABLE GOODS—INJURY AFTER SHIPMENT.

If perishable goods, when shipped pursuant to a contract of sale, are such as the contract calls for and are in good condition, the seller is not responsible for damages resulting from any cause after shipment.

10. SAME—ACTION FOR PRICE—DEFENSES.

Where a buyer notifies the seller within a reasonable time of the rescission of the contract because the goods are not such as were contracted for, and asks what disposition he shall make of them, and the seller replies, insisting that he has fully performed the contract, the buyer may dispose of the goods at the best price obtainable,.and interpose, when sued, the defense of the seller's noncompliance with the contract.

Error to Wayne; Donovan, J. Submitted January 11, 1906. (Docket No. 56.) Decided March 13, 1906.

Assumpsit by Elmer J. Jones against Abraham Bloomgarden and William M. Ellenstein,· copartners as Bloomgarden & Ellenstein, for goods sold and delivered. There was judgment for plaintiff for less than the amount claimed, and he brings error. Reversed.

The material facts in this case are as follows: Plaintiff is a commission merchant in Baltimore, Md., dealing in different kinds of produce. Defendants are commission merchants in the city of Detroit. A firm under the name of Floyd E. Bowen & Co. are produce brokers in Detroit. On June 11th, plaintiff telegraphed Bowen & Co.:

" Sell three hundred baskets or less. Fine bushel wax. Dollar. Wire quick."

Bowen & Co. replied:

" Bloomgarden Ellenstein will take car bushel fine wax ninety cents today Empire Line. Ice the car. Answer."

Plaintiff replied to Bowen & Co., same date, as follows:

" Too late to get car off today. Will accept offer Monday's shipment. Wire at once."

Bowen & Co. replied to plaintiff:

" Bloomgarden takes car Monday shipment ninety cents or less if market lower. Empire Line, ice car."

On Monday, June 13th, plaintiff wired Bowen & Co.:

" Today's arrivals wax very poor, spotted, bad condition; wouldn't suit your party; thought best hold car over for tomorrow's shipment."

Bowen & Co. made no reply, and on Tuesday, the 14th, plaintiff, assuming that defendants had accepted the change of date, shipped the beans as directed. The car reached Detroit on Friday, the 17th. Defendants were notified of its arrival on the morning of Saturday, the 18th. Defendant Bloomgarden immediately went to the car, opened the door, examined 10 or 15 hampers or baskets near the door, and found them in good condition, and such as he had ordered. The car was also found well refrigerated. Defendants complained because the car had not been shipped on Monday. Bowen & Co. had failed to notify them of the delay in shipment. Bloomgarden told Bowen & Co. that he would take the car if 10 cents off would be allowed, and Bowen said there had been some misunderstanding about the telegram, and he would try and get the reduction. Thereupon Bowen & Co. telegraphed plaintiff on June 18th as follows:

" Bloomgarden will only accept car beans, provided ten cents hamper allowance account not shipping Monday. Quality satisfactory."

To this plaintiff replied by wire promptly:

" Our telegram 13th fully advised you. Receiving nothing contrary shipped. You were given ample time to countermand. Will hold Bloomgarden."

The car, after the examination made by Bloomgarden, was closed, and nothing further done until Monday morning. Sunday, Bowen and Bloomgarden had a conversation, and defendants concluded to take the beans. Thereupon Bowen & Co. telegraphed plaintiff on Monday morning:

"Persuaded Bloomgarden take car. Will unload today."

Monday morning Bloomgarden took possession of the car; took two loads to the defendants' markets and sold two to other parties; these four containing about half the car. Complaint was promptly made that the beans were in bad condition and spotted. Defendants telephoned Bowen, who came, in response, to one of the defendants' markets, and examined the beans. The defendants and Bowen disagree as to what took place there and then; defendants claiming that they then told him that they refused to accept the beans, and that they made an arrangement with Bowen by which defendants would sell them for the account of the plaintiff. They claim that they realized pursuant to that agreement $134, for which they sent a draft to the plaintiff, which was promptly returned and this suit instituted to recover the purchase price. Bowen denies any such agreement, and testified that he had no authority from the plaintiff to make any such contract. At noon of Monday, the 20th, after the alleged conversation and agreement with Bowen, defendants telegraphed:

"Can't use car beans. Stock very poor. Advise disposition."

To which plaintiff promptly replied:

"Car belongs to you. Will hold you for it. Wax in perfect condition when shipped."

Plaintiff gave evidence tending to show that he took special pains in purchasing and shipping this car of beans, and that they were in perfect condition when shipped. Defendants gave evidence tending to show the bad condi-

tion of the beans when taken from the car Monday, two days after he was notified of their arrival. The jury found for the defendants.

The charge of the trial court is as follows:

"I call your attention to volume 1 of what is known as Miller's Compilation, page 342, section 739:

"'When a cause is continued, as provided for in 33 section, and it shall appear that any of the property taken under an attachment consists of animals or perishable property, the defendants may make an order directing the officer having the custody thereof, to dispose of the same as upon execution, and the money realized therefrom, shall be paid over to the defendants to apply as their money realized from the sale of the property attached.'

"That is an indirect inference, or reference, and the other a little more direct.

"Volume 3, page 3136, section 10360:

"'Whenever the sheriff of any county shall, by virtue of any attachment or execution issued by a court of record, levy upon any peaches, blackberries, raspberries, or strawberries, he shall proceed to sell the same at such time, place and manner, as he shall deem most beneficial to the interests of the defendant.'

"And another section following:

"'Whenever any constable shall, by virtue of any attachment or execution issued by any justice of the peace, levy upon any peaches, blackberries, raspberries, or strawberries, he shall forthwith make his returns to the defendants, who shall by a written order authorize the constable to sell said property at such place and manner as said justice shall deem most beneficial.'

"I cite these sections to show that there is a little sense in the law, as well as the spirit of the law. I have been trying considerable to find exactly in our statutes anything direct to apply to all cases. I have not been able to find a case that applies exactly to this case, but the first interrogatory in this case for the jury is: Did the defendants, the men sued here, accept the goods knowing what they were? Now, on Saturday they made a casual examination, but that is a matter of evidence. You heard what they said about it, and the second question is: Were the buyers entitled to examine the goods before electing to accept them? Well, you heard their statement. Whether they had a fair opportunity in an open

door of the car, in the depot, a well-filled car, with these goods — whether they had an opportunity to know the whole scope and meaning of the goods, or whether they were such as they were right at the car door we will leave that to you.

" And the third question is whether they did not have, as reasonable men, a chance to examine the beans. If they took them out and packed them in again, and repacked them and sent them back to Baltimore, the chances are a hundred to one they never would have been worth a penny; a hundred to one they never could have realized upon goods of that kind. Somebody, somewhere, in some manner had to handle these goods.

" And the next question is as to the agency of Bowen— whether he could bind any plaintiff or not. You have heard the testimony, which is contradictory. It is not clear. You know it is not clear. Mr. Bowen himself, while he guards himself by saying that he does not remember anything of that kind, in that guarded way he had no authority, he had no written authority, he had no express direction, he had no telegram, but notice, and went to the house on a dicker on these beans. I notice one of the men said they bought the beans from Mr. Bowen. And he was telephoned to go to the ground. Something happened to the beans, and what happened I will leave to you. That was under what circumstances Bowen was the active man for the Baltimore house I will leave to you. And this authority may be either express or implied. It may be implied in this way. His authority may be gathered by a third person's acts, by the circumstances surrounding the case, from his holding himself out as the agent, and from his doing acts, and they may not know the direct or the whole scope of his authority, but can deal with him. They may say he has some authority, and we do not know how much. And so you are to judge the case—whether the circumstances or not gave him the authority to do what he does here, and why he did it. The principal is bound by his acts, even if his authority is limited as between the two. That is, if Bowen and the Baltimore house had a bargain of their own—if he had limited authority; if he did not have authority to sell absolutely, and yet if the buyers of 'the beans in Detroit believe from all the circumstances and have a right to believe and have reason to believe from all their dealings that would be a greater authority, and if you believe their theory, then these circumstances and surroundings may

be taken into consideration by the jury as a measure of
his authority.   That is, where a third party has no notice
of the limited authority—has no notice of any limit of
authority, and acts in good faith, on the general author-
ity, and the circumstances of the authority, you may con-
sider those facts.   So that the agency or not of Bowen is
a question for the jury..   If you believe his statement, and
the statement of the plaintiff in this case, you would say
he had no authority to even tell them to go on and sell.
If you believe the statement made by the defendants in
the case, the buyers of the beans actually, why it was
that he had authority.   That is, he was acting for them.
He was their man, and the circumstances gave them to
believe that he could dispose of the beans—that he could
sell them in the first instance.   Well, I will leave that
question to you.

"Now, the law is so reasonable it will take into account
things like this:   If a man should come in here and ship
in here to his agent a couple of large beef cattle, and by
some means one of them would get his leg broken, why,
the man would have authority to sell as a broken-legged ox,
and to have him killed and disposed of and not be able to
go out with the full authority.   The law is reasonable.
He would have a right to dispose of him in a broken con-
dition, where he could not be sent back to the shipper.
So that the law is reasonable in a great many respects in
that way.   And the law implies people have the right to
do the right thing for their employer.   That is, they can-
not bind them to do the wrong thing.   They cannot bind
them to their disadvantage, but they may bind them to do
the right thing by their property.   To save it.   Just as it
gives a constable the authority, and gives the sheriff the
authority, to do something to save things.

"Now, you are to consider all the circumstances.   It is
not a law question.   If these goods were sent on in a mer-
chantable condition, that would be all the law required.
But the law implies that they must be sent here in a mer-
chantable condition, if they say nothing about their con-
dition.   Unless they are brought as culls; unless they are
bought at some cut rate; unless they are bought for bad
goods, the law presumes they are good goods, without a
word being said one way or the other.   If they buy a bar-
rel of apples, or a lot apples, the law implies it is a barrel
of good apples.   They buy a barrel of flour—the law
implies it is not musty flour; it is merchantable flour.   So

the law puts that implication upon goods that are sent on, and, if they are not up to the standard, in almost all cases they may be returned, but if they were strawberries, or something perishable like the statute speaks of, or raspberries, like that, unable to be returned, it would be silly to send them back to make a bill of expense.

"Now, let us see how wise and how careful and how reasonable you will be. If the blame is upon the buyer in this case — if there is any attempt to creep out of a bargain, and it is on the buyer, why, hold them to the contract; and if it is on the seller, and there is any attempt to force a bargain unlawfully on goods not salable, not merchantable, why, hold them to the contract.

"Now, the recovery upon the part of the plaintiff is in the neighborhood of $540, and the recovery upon the part of the defendant — that is, upon his basis, and the theory of the defendant, is $134. It is a recovery for the plaintiff in any event, but it is the amount.

"*Mr. Jones:*  The correct amount the plaintiff asks is $546.

"*The Court:*  Will one of the jury take that down, and the other is $134.06. We will leave the whole matter to you. As I said during the case, agency is a question of fact, and the whole matter is in dispute."

*Clark, Jones & Bryant,* for appellants.

*Bowen, Douglas, Whiting & Murfin,* for appellee.

GRANT, J. (*after stating the facts*). 1. The errors in the charge are too patent and glaring to require much comment. It gave the jury to understand that the defendants had the same right to dispose of this perishable property under their contract for its purchase that officers would have when levying upon perishable property under writs of attachment and execution. It furthermore gave the jury to understand that, if the defendants refused to accept the beans, it was their duty to reship the car to Baltimore. The illustration about the cattle placed the parties to this suit in the position of principal and agent instead of vendor and vendee. The charge also stated that holding one's self out as agent is evidence of authority.

2. The brokers, Bowen & Co., had no authority to make a contract with defendants on behalf of the plaintiff to annul the contract of sale and authorize them to sell the beans for the account of the plaintiff. Bowen & Co. were simply brokers or middlemen. Defendants knew that they were not purchasing of them, but of the plaintiff. The defendants, after the inspection made by them Saturday morning, closed the contract, and Bowen & Co. so telegraphed plaintiff. The failure to ship Monday was waived. Bowen & Co.'s connection with the transaction was closed. They were employed for the sole purpose of making a sale, and made it. They had no authority to take any other steps in the transaction. It was therefore error to admit evidence of this arrangement with Bowen & Co., of which the plaintiff knew nothing. If such an arrangement—which Bowen denies—was made, defendants evidently doubted Bowen's authority, for they afterwards sent a telegram which is inconsistent with it.

3. The most difficult question arises upon the inspection. It is conceded that the defendants were entitled to inspect the beans upon their arrival in Detroit, and that they were entitled to a reasonable time in which to inspect. The reasonable time allowed by the law for inspection depends upon the circumstances of the case, and is usually a question of fact for the jury. 2 Mechem on Sales, § 1381. The vendee is required to act promptly. *George D. Sisson Lumber & Shingle Co.* v. *Haak*, 139 Mich. 383. This reasonable time must also depend more or less upon the character of the goods shipped, and the opportunity for inspection. A more prompt inspection of perishable property is required than of nonperishable property. This is based upon sound reason, but counsel cite no authorities upon the subject, and I have been unable to find any. A car load of perishable fruit or vegetables should receive more prompt attention than a car load of lumber. Where lumber was shipped in box cars the vendees were held entitled to take it to their yards, unload and examine before accepting it. *Holmes* v. *Gregg*, 66 N. H. 621.

The learned counsel for the plaintiff insist that the acts of the defendants amounted to an acceptance of the goods, and bars any defense to this action. That depends upon the character of the inspection which the defendants ought, in justice, to have made. It has been held that an inspection sufficient in law is not conclusive upon the rights of the vendee, where there is a latent defect afterwards discovered. *Miller* v. *Moore*, 83 Ga. 684 (6 L. R. A. 374); 2 Mechem on Sales, §§ 1392, 1393. If the defendants did not make the customary and necessary inspection, they cannot recover. If they did make an inspection customary and sufficient to determine the character of the entire car load, was it customary and proper to leave the car load, in hot weather, in the yards of the railroad company, for 48 hours without further icing? One of the defendants' witnesses testified that it was impossible to determine the quality of the beans until one got into the two ends of the car. If this be the fact and the defendants knew it, was it their duty to make that inspection at once, even if it would take several hours? Can they defend by postponing it two days, leaving the beans in the car? This same witness saw these beans in the car, but on just what day is not clear. When asked what the condition of the beans was, he replied, "Well, they were the same, if not worse; on account of the ice getting out, some of them nested in the center."

The question is an important one, and does not seem to have received the attention and consideration in the court below that it ought. We are unable to say upon this record that a proper inspection was made. The first attempt at inspection was made in seasonable time. The instruction of the court upon this point gave the jury no rule of law to govern them. Facts other than those appearing in this record may, upon a new trial, affect the question. We can now only announce some general rules of law applicable to the case. It was the duty of the defendants to make a prompt inspection and such as is customary and sufficient to determine the character of the goods. If they made such

an inspection they did all that the law requires, and if there were defects in the beans not opened, which existed at the time of shipment, the plaintiff cannot recover on the contract, but only on a count of quantum meruit. *Miller* v. *Moore*, supra. If that inspection was not such as the law requires, then notice of rescission was not given within a reasonable time, and the defendants are liable for the full amount of the contract price. If a more extensive inspection was necessary to determine the character of the goods, it was the duty of the defendants to make it, and they cannot defend upon the ground that it would take them several hours to do it. If the beans became damaged after the inspection, the plaintiff is not responsible for such damage. If, when shipped, they were such as the contract called for, and were shipped in good condition, the plaintiff is not responsible for damages resulting from any cause after they were so shipped.

Where a vendee notifies the vendor within a reasonable time of the rescission of the contract because the goods are not such as were contracted for, and asks what disposition he shall make of them, and the vendor replies, insisting that he has fully performed the contract, the vendee may dispose of the goods at the best price obtainable, and interpose, when sued, the defense of the vendor's noncompliance with the contract. *Howard* v. *Hoey*, 23 Wend. (N. Y.) 350. There are many decisions to the contrary, but the weight of authority favors the rule above stated, and we think it is founded in sound reason. 2 Mechem on Sales, §§ 1392, 1393. This case is easily distinguishable from *Kupfer* v. *Michigan Clothing Co.*, 141 Mich. 325.

Judgment reversed, and new trial ordered.

McAlvay, Blair, Montgomery, and Ostrander, JJ., concurred.