BERWICK STORE COMPANY, LTD., *v.* STARKS.

1. CONTRACTS — ACCEPTANCE — WAIVER OF INSPECTION — FREIGHT—
WRONGFUL DELIVERY.

Defendant claimed, in an action brought by the purchaser
of a carload of potatoes, that it had shipped the property
to the plaintiff with a sight draft attached to bill of lad-
ing containing directions to the carrier to deliver to the
plaintiff only upon payment of the draft. Upon arrival
of the carload of potatoes, plaintiff declined to receive the
goods on the ground that the potatoes were frosted, the
broker who made the sale advising defendant of the fact
and that the plaintiff would take the car if defendant
would protect it from loss. Defendant telegraphed to have
plaintiff accept the carload subject to loss, if any. In the
meantime, the carrier surrendered the car of potatoes to
plaintiff without requiring the presentation of the draft.
Plaintiff wrote defendant for advice how the loss would
be repaid, stating that if it paid the draft in full and a
feasible proposition was made it would close the deal.
The agent of the terminal carrier also wrote to the de-
fendant stating that the position of plaintiff was that
it was unwilling to pay the face of the draft and wait
for an adjustment. There was no further correspondence
or acceptance of the offer of settlement made by defend-
ant. Plaintiff subsequently paid the draft. *Held*, that
the correspondence did not constitute a valid contract or
adjustment binding upon the defendant to permit plain-
tiff to recover from defendant the amount of damage by
frost; that when plaintiff accepted the car without pay-
ment of the draft or production of the original bill of
lading, it became liable for the contract price.

2. SAME—SALES—ACCEPTANCE AND RECEIPT—FREIGHT—CARRIERS—
RIGHT OF INSPECTION—WAIVER.

Where plaintiff received a carload of freight and took
possession without the production of the order bill of
lading to which a sight draft had been attached and
forwarded by defendant, granting to plaintiff the right
of inspection before delivery, and plaintiff did not pay
the draft or produce the bill of lading upon receipt of

the goods, it waived the right of inspection authorized
in the bill of lading and accepted such freight absolutely,
becoming liable for the purchase price.

Error to Kent; Perkins, J. Submitted June 17,
1914. (Docket No. 91.) Decided April 19, 1915.

Assumpsit by Berwick Store Company, Ltd., a co-
partnership, against Leonard Starks for an alleged
loss upon a carload of potatoes. Judgment for plain-
tiff. Defendant brings error. Reversed; new trial
denied.

*Hall & Gillard*, for appellant.

*Hatch, McAllister & Raymond*, for appellee.

McALVAY, J. Plaintiff sued defendant in assumpsit
for the amount of a certain claimed loss on a car load
shipment of potatoes. Upon an issue joined, the case
was tried before a jury. At the close of the proofs
in the case, defendant moved for a directed verdict
in his favor upon the following grounds: That the
proofs fail to support the allegations of the declara-
tion, and there was a fatal variance between the dec-
laration and the proofs; that there was no written
acceptance of the offer made by defendant, and no
proof showing that the potatoes were accepted on the
strength of the telegram of January 15th; that the
proof shows no acceptance of the offer, but only a
counter proposition; that the claim was not made
within ten days from the date of the invoice; that
the action was barred by the statute of limitations,
which was pleaded. This motion was overruled by
the court, holding that the plaintiff was entitled to
recover; that the amount due plaintiff was a question
for the jury, reserving a decision on the question rela-
tive to the statute of limitations. The court sub-
mitted the above question of fact to the jury which
found for plaintiff the amount claimed, with interest.

Later the court held that the statute of limitations was no bar to the action, and a judgment was entered. From the judgment which plaintiff has recovered against him, defendant has removed the case to this court for review upon errors duly assigned.

The material facts in the case necessary to be stated are as follows:

Plaintiff was a limited partnership located at Berwick, Pa. Defendant resided at Plainfield, Wis., and was engaged in the wholesale potato business, with headquarters at Chicago. He had for several years maintained an office at Grand Rapids, Mich., in charge of a manager, where, at the time of the transaction involved in this suit, he did business in his own name. In March, 1903, the business was incorporated under the name of L. Starks Company, an Illinois corporation, which was shortly after licensed to do business in Michigan. A branch office has since been maintained in Grand Rapids.

On January 9, 1903, W. S. Reed, of Bloomsburg, Pa., a broker, submitted to the Grand Rapids office of defendant an offer for a car load of potatoes at 60 cents per bushel, made by plaintiff, which was confirmed and then accepted by defendant. On January 9, 1903, the car load of potatoes was shipped from Mt. Pleasant, Mich., a shipping point of defendant, containing 33,000 pounds, and, in accordance with the offer, acceptance, and the bill of lading, a draft was prepared, with bill of lading attached, and sent forward to the bank at Berwick for collection. The invoice of the car was made on January 10, 1903. The exact date the car arrived at Berwick is not stated. It is admitted that this shipment was made upon a bill of lading which allowed inspection, and required surrender of the bill of lading before delivery of the property.

It appears from the record without dispute that the

plaintiff for some time previous to the purchase of this car load of potatoes had an arrangement with the terminal carrier at that place to the effect that, by giving a general indemnity bond to the carrier, it would deliver on the switch of the American Car & Foundry Company, which was used by the Berwick Store Company, all cars received for them, without surrender of the bill of lading. The car in question under this agreement was so placed on this switch immediately upon its arrival without the payment of the draft or the delivery of the bill of lading. The record also shows that, after these cars were delivered on this switch by the terminal carrier, it had no supervision or control over them; that they were moved by the American Car & Foundry Company's engines, and no claims arising against the railroad company for such delivery were intended to be covered by the general bond indemnity given by plaintiff.

After this shipment made by defendant, his first knowledge that it had arrived at its destination was from a cipher telegram sent by the broker, W. S. Reed, from Bloomsburg, Pa., a place 12 miles from Berwick, dated January 14, 1903, which, translated, reads as follows:

"BERWICK, PENN., Jan. 14, 1903.
"Berwick Store refuses car, stock frosted. Car shows frost. Will take it if you will protect from loss. Give us all the information you can about this. Will do best possible for you. We are awaiting instructions. Have rushed car into nearest round house."

To which defendant answered:

"GRAND RAPIDS, MICH., Jan. 15, 1903.
"W. S. Reed, Bloomsburg, Penn.: Have Berwick Store take car throwing out frost, if any, our loss. Confident will be very light.          L. STARKS."

Defendant next wrote the following letter:

"GRAND RAPIDS, MICH., Jan. 19, 1903.
"W. S. REED,
    "Bloomsburg, Penn.
"*Dear Sir:*
"Yours of the 15th at hand and contents noted. We are confident loss on account of frost in Berwick car will not amount to anything at all. As soon as car is unloaded wish you would have him advise us just how they came out on the car, but we are confident that the loss, if any, will be very light indeed.
                    "Yours truly,
                            "L. STARKS."

On January 22d defendant telegraphed Reed:

"Railroad people report car to Berwick Store refused. Undelivered. What's trouble? Answer."

From the date of this telegram until the 30th of January following, defendant telegraphed daily to plaintiff, to Reed, and to the terminal carrier's agent, to ascertain whether plaintiff had accepted or unloaded the potatoes, when he received an answer from Reed:

"Berwick Store wants to know if you are going to lift draft. Answer quick."

And from the terminal carrier's agent a reply:

"Potatoes in round house. Berwick Store will accept if draft is withdrawn."

On February 2d following, he received from the terminal carrier's agent the following message:

"Potatoes delivered on bond of indemnity. Bill of lading unsurrendered."

Immediately after receipt of the terminal carrier's telegram that the car had been delivered without the surrender of the original bill of lading, defendant notified this carrier company he would hold it responsible for the value of the potatoes. Plaintiff then wrote defendant, on February 6th, a letter, of which the following is a part:

"Kindly advise us how you intend to return to us the amount of loss we have suffered on car of potatoes. If we pay draft in full upon receipt of same and your proposition seems feasible we would be glad to close the deal."

On February 7th the terminal carrier's agent wrote defendant a letter in which he said, referring to the Berwick Store Company:

"The position they take is that they are unwilling to pay the face of the draft and then wait for an adjustment later on. I have every reason to believe that their bond of indemnity to our company is good."

The case was tried by the plaintiff upon the theory that it accepted the car of potatoes on the strength of defendant's telegram to Reed of January 15th, as follows:

"Have Berwick Store take car throwing out frost, if any, our loss. Confident will be very light."

This was the theory upon which the case was submitted to the jury by the court, and is the sole reliance of the plaintiff in this court. The question, therefore, before this court, is reduced to very narrow limits.

It is appellant's claim that this car of potatoes was shipped to plaintiff as consignee upon an order bill of lading allowing inspection, property not to be delivered before surrender of the original bill of lading; that upon arrival the car, without surrender of the original bill of lading, was at once delivered to plaintiff, who received it without inspection and took exclusive possession and control of it; that the telegram relied upon was in answer to a telegram sent by Reed from Bloomsburg, January 15th, as follows:

"Berwick Store refuses car, stock frosted. Car shows frost. Will take it if you will protect from loss. Give us all the information you can about this. Will do best possible for you. We are awaiting instructions. Have rushed car to nearest round house."

Plaintiff also contends that there was no evidence

in the case showing that the potatoes were accepted on the strength of the telegram of January 15th; that the telegram was a proposition which was never accepted by the plaintiff.

It is not disputed that the car, under a standing agreement between the terminal carrier and plaintiff, whereby plaintiff indemnified the carrier by bond, was at once delivered to the plaintiff upon its arrival, wrongfully and without any authority on the part of the carrier, and contrary to the terms of the bill of lading. Upon this subject the court said:

"In the first place it is conceded that this car load of potatoes was shipped down into Pennsylvania to the plaintiff as consignee with the privilege of inspection before acceptance and payment of the draft which was sent forward attached to the bill of lading. It is undisputed that, when the car arrived at Berwick, it was immediately placed upon the spur track leading to the plaintiff's warehouse and was practically turned over by the railroad company to the plaintiff company."

This undisputed proposition, standing alone, in our opinion, as a matter of law, was a delivery and an acceptance without inspection, which was waived by the plaintiff.

The controlling question in the case, therefore, is whether the telegram of January 15th, sent by defendant to Reed, under the circumstances, relieved the plaintiff from the effect of an acceptance without inspection. It must be admitted that had the car at that time been in the possession of the terminal carrier, and been inspected by plaintiff and acceptance refused on account of the frozen condition of the potatoes, and plaintiff, after receiving this telegram, had paid the draft and taken the car, defendant would have been liable to pay for loss on account of frost. That was the condition defendant had a right to suppose existed at the time the telegram from Reed was received and his telegram answering it was sent.

This is apparent from both these telegrams. Reed said:

"Berwick Store refuses car, stock frosted. Car shows frost. Will take it if you will protect from loss."

Defendant's answer says:

"Have Berwick Store take car throwing out frost, if any, our loss."

In this telegram no authority was given to the railroad company to deliver the car, and none can be inferred. The record shows, without dispute, that defendant never authorized a delivery until the draft was paid. This was the situation, as far as any knowledge by defendant of a delivery of the car was concerned, until February 2d, although in the meantime he was repeatedly telegraphing to Reed, the plaintiff, and the railroad company to know whether plaintiff had accepted the car and unloaded the potatoes. On that date defendant was informed for the first time by a telegram from the terminal carrier's agent:

"Potatoes delivered on bond of indemnity. Bill of lading unsurrendered."

During this interim the only information defendant could get was to the effect that plaintiff would not accept this proposition unless defendant withdrew the draft. These telegrams and the letter of plaintiff show that plaintiff and the carrier's agent both knew that plaintiff had no right to the car until it was released by the presentation of the bill of lading.

The undisputed testimony on the part of plaintiff in this case shows that under defendant's telegram of January 15th plaintiff understood, before it was entitled to a delivery of the car, it was its duty to pay the draft and get possession of the bill of lading. It appears from the telegram sent by Reed and by the terminal carrier's agent that defendant's proposition

would not be accepted unless the draft was withdrawn. Defendant never released the car and refused to withdraw the draft.

Defendant's telegram of January 15th, made by him in ignorance of the actual facts of the situation, was a proposition to plaintiff which was not accepted, but was met by a counter proposition by the plaintiff, which defendant refused to accept. It follows that this telegram, upon which plaintiff relies, did not relieve it from the effect of its voluntary acceptance of this car of potatoes without inspection. As a matter of law, plaintiff accepted this consignment of potatoes when it took possession of them without inspection, on or before January 14, 1903. *Williams* v. *Robb,* 104 Mich. 242 (62 N. W. 352) ; *Jones* v. *Bloomgarden,* 143 Mich. 326 (106 N. W. 891). See, also, *Weyl* v. *South Pacific Co.,* 156 Ill. App. 493. Afterwards, while the car was in its own possession and under its absolute control, inspection was made. This occurred before defendant had any notice that the car had been delivered to plaintiff, and at least one day before the telegram of January 15th was sent by him. The evidence in the case shows that the potatoes were not accepted by plaintiff on the strength of this telegram.

Two of the grounds of defendant's motion for an instructed verdict were: That "the proof shows no acceptance of defendant's offer, but only a counter proposition;" also that there. was no proof showing that the potatoes were accepted on the strength of the telegram of January 15th.

Our conclusion is that the court was in error in not directing a verdict for defendant as requested. Other questions do not require consideration.

The judgment is reversed, and no new trial granted.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.