### LIEBLEIN *v.* ISBELL BEAN CO.

CONTRACTS—SALES—WAIVER OF INSPECTION—ACCEPTANCE.
In an action to recover the purchase price of 13 bags of beans which plaintiff purchased from defendant and paid for in advance, evidence that the beans were shipped subject to inspection, that plaintiff surrendered to the railroad company the order bill of lading which had been indorsed to him, and, without inspecting the beans, removed them to his warehouse on June 28th, *held*, to warrant the finding of the court below that plaintiff by his conduct accepted the beans and was precluded from thereafter claiming a right to recover because inspection "some time in July," disclosed that they were spoiled.

Error to Houghton; Fead, J. Submitted April 24, 1919. (Docket No. 60.) Decided May 29, 1919.

Assumpsit by Edward M. Lieblein against the Isbell Bean Company for goods sold and delivered. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Hanchette & Lawton,* for appellant.
*MacDonald & Kerr,* for appellee.

BROOKE, J. This case involves the sum of $113, being the value of 13 bags of red kidney hand-picked beans. The dispute between the parties arose in the following manner: Plaintiff purchased from defendant on November 15, 1911, 25 bags of beans of the value of $228.75. The shipment went forward and bill of lading with draft attached accompanied it. This draft was paid by plaintiff and the bill of lading which contained the words "subject to inspection" was surrendered to the railroad company. The beans were removed to the plaintiff's warehouse and some time thereafter were for the first time inspected. Plaintiff claimed that 13 bags proved to be badly cured and developed mold. The matter was immediately taken up by the plaintiff with the defendant and with the broker who had placed the order, Mr. Lavigne, with the result that defendant agreed to replace the 13 bags of defective merchandise with choice stock. These 13 bags went forward under an order bill of lading under date of May 8, 1912, which contained the words "allow inspection." Plaintiff was advised by the railroad of their arrival on May 31, 1912, and was likewise advised that there were freight charges in connection with the shipment amounting to $5.85. Correspondence immediately ensued between the parties relative to the payment of the freight charges which ultimately were paid by defendant. In the meantime the price of the beans had dropped about 98c per bushel, so that the market value of the beans received in replacement at the time they were received was some $30 less than the amount paid for those returned. Further correspondence ensued between the parties over this difference. The freight having been paid or satisfactorily adjusted, plaintiff surrendered the order bill of lading (which had been indorsed to him by defendant, the value of the shipment having been paid by the taking up of the bill of lading in

the original shipment) to the railroad, and, without inspecting the 13 bags, removed them to his warehouse, on the 28th of June, 1912. Correspondence ensued between the parties over the difference in price, and in the meantime a second shipment of 30 bags made on May 23, 1912, had arrived which plaintiff refused to accept because of the failure of the defendant to adjust said difference. On July 22, 1912, plaintiff wrote defendant the following letter:

"July 22, 1912.

"THE ISBELL BEAN CO.,
     "Detroit, Mich.

"*Gentlemen:* I have your favor of the 19th inst. I have repeatedly advised you when you remit your check in payment of the amount due me for decline in price on the thirteen bag lot from Shelby elevator I will take up this draft covering the shipment of May 23 and take possession of these beans. What are you going to do about this anyway? I stand ready to do my part just as soon as you have done yours.

"Very truly yours,
     "ED. M. LIEBLEIN."

In this it will be noted that there is no claim that the second shipment of beans was inferior although at that time it had been in plaintiff's warehouse nearly 30 days. Later a claim was made that the second shipment of 13 bags was absolutely worthless and unfit for food. No adjustment having been reached between the parties suit was brought by the plaintiff for $113.60, the amount of the draft drawn by plaintiff on defendant and dishonored by the defendant, being the value of the 13 bags said to be worthless. Evidence was introduced tending to show that the beans were not inspected before delivery; that they were delivered on June 28th, and were inspected at the warehouse "some time in July." A motion was made for a directed verdict in favor of the defendant at the close of the plaintiff's case and both parties

having rested the court granted the motion, saying in part:

"And it appears that some time in May 13 sacks of beans to take the place of the 13 sacks of defective beans in the November shipment were sent to the plaintiff. For a period of two or three weeks, at least, there was some correspondence between the parties relative to the freight charges, and that was finally adjusted, and it appears that about a month after the plaintiff knew the beans were at the railroad and after he had in his possession the bill of lading which would entitle him to obtain the beans, he sent to the defendant a bill or statement for the difference in price between what he had paid for the beans in the fall before and what they were worth at the time of the delivery in May. As stated, gentlemen, this statement was sent about a month after the plaintiff knew that the beans had arrived at the depot. The beans were there under an order bill of lading, subject to inspection, and during that month the plaintiff had an ample opportunity to inspect them. His sending the statement of that kind at that time after that opportunity to inspect, constituted an acceptance of the beans and he was not entitled thereafter to reject them. Aside from that, it appears to me that not only was that an acceptance of the beans and completed and closed the contract, but the correspondence between the parties after it is claimed that the plaintiff inspected the beans and found them defective, is amply sufficient to show an acceptance upon the part of the plaintiff, and whether those beans were good or bad he had a right to accept them if he desired, and having accepted them the contract became completed and he would be liable for their purchase price in case the purchase price had not been paid in advance, as happened to be the case in this particular instance."

Plaintiff reviews the case in this court under 17 assignments of error which may be treated together, the meritorious question being whether the court was in error in directing a verdict for the defendant on the ground that the plaintiff by his conduct had ac-

cepted the 13-bag shipment and was without remedy in the premises. We are of opinion that the question is settled contrary to plaintiff's contention by our decision in *Berwick Store Co.* v. *Starks*, 185 Mich. 473, where it is said:

"As a matter of law, plaintiff accepted this consignment of potatoes when it took possession of them without inspection, on or before January 14, 1903. *Williams* v. *Robb*, 104 Mich. 242; *Jones* v. *Bloomgarden*, 143 Mich. 326. See, also, *Weyl* v. *South Pacific Co.*, 156 Ill. App. 493."

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.